# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-833


**PURVIS TOUCHET**

**VERSUS**

**MARK HAMPTON**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20031894
HONORABLE JULES DAVID EDWARDS III, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Chris J. Roy, Sr.,[*]
Judges.

**REVERSED AND RENDERED.**


**Waple Alan Lilley**
**Attorney at Law**
**109 Stewart St**
**Lafayette, LA 70501**
**(337) 261-3167**
**Counsel for Defendant-Appellee:**
**Mark Hampton**

**Carrol Lee Spell Jr.**
**Attorney at Law**
**P. O. Box 249**
**Milton, LA 70558**
**(337) 857-9772**
**Counsel for Plaintiff-Appellant:**
**Purvis Touchet**

---

[*]Honorable Chris J. Roy, Sr., participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**PICKETT, Judge.**

The plaintiff-appellant, Purvis Touchet, appeals a judgment of the trial court finding he failed to prove that Mark Hampton, the defendant, committed the intentional tort of battery against him.

<u>STATEMENT OF THE CASE</u>

This is the second time this case has been before this court on appeal. In the original appeal, the trial court granted Mr. Hampton's motion for an involuntary dismissal at the close of Mr. Touchet's presentation of evidence based on a finding that Mr. Hampton acted in self-defense. *Touchet v. Hampton*, 06-1120 (La.App. 3 Cir. 2/7/07), 950 So.2d 895. This court set forth the facts as follows:

> The plaintiff, Purvis Touchet, was a sales manager at Hampton Mitsubishi, a car dealership owned by the defendant, Mark Hampton, for approximately three years. Touchet testified that he briefly left his employment with the dealership but subsequently returned to his former job position. He testified that his employment was terminated during the summer of 2002.

> According to Hampton, the parting was amicable. However, he testified that in October 2002, he received a telephone call from Touchet in which "he basically was sort of making fun of our business because our business had gone down." Hampton stated that he hung up the telephone and that Touchet called back later that day. Hampton did not speak with him. Hampton testified that when he spoke with Touchet again, Touchet cursed him, threatened him, and told him that he knew where he lived. According to Hampton, Touchet continued to call and when he did not answer, Touchet left him several threatening voice mail messages, three of which were left on October 13, 2002.

> Hampton testified that on October 19, 2002, he went to Jackie Edgar RV Center, Touchet's place of employment, "[b]ecause it was a public place, and I felt it was the safest place to talk to him." Touchet was not there. According to Hampton, he returned to Jackie Edgar RV Center on October 22, 2002 to "tell [Touchet] to quit harassing me and to ask him to stop calling me." Hampton asked if Touchet was in, and someone pointed him towards Touchet's office. Hampton testified that when he entered Touchet's office, Touchet, whose back was to Hampton, quickly turned around in his chair and yelled "F[--k] you, Hampton." Hampton stated that he was startled and scared because it

1

appeared as if Touchet "was going to hit me, what he said he was going to do." Hampton testified that he defended himself by hitting Touchet. Although he did not know how many times he hit Touchet, Hampton surmised that the incident lasted approximately twenty seconds before Touchet's co-worker, David Raggette, intervened and pulled Hampton off Touchet. Hampton immediately left the premises.

*Id.*, 950 So.2d at 896-97 (Footnote omitted).

This court found that the trial court committed manifest error by finding that Mr. Hampton acted in self-defense and remanded the case to allow the defendant to present evidence. On remand, Mr. Hampton submitted the deposition of Michael Reed, a friend of Mr. Hampton. Mr. Reed accompanied Mr. Hampton to Mr. Touchet's workplace three days before the incident occurred and spoke with him after the incident occurred. The defense then rested.

The trial court issued the following findings of fact and oral reasons for ruling in open court on January 29, 2008:

This Court makes the following factual findings, and warns that these findings contain the offensive utterances of the plaintiff.

On Sunday, 13 October 2002, Touchet called Hampton's home on three separate occasions and left threatening and offensive messages. The most significant portions of those messages are: the first message that occurred on Sunday, October 13th at 2:41 [p.m.] contained a significant amount of information, but the most significant was the following language: "I am going to f--king murder your ass." Then there was a subsequent message on that same date at 2:45 p.m. which, again, contained lots of threatening and offensive language, the most significant of which was: "Anytime you want to f--k with me, let me know."

Then there was another message that was recorded – all these messages were recorded on a voice mail recording system on Hampton's phone – this third message occurred, was delivered at 2:48 p.m., and, again, contains lots of offensive language, the most significant of which – the most significant because of his threat is: "Let me and you come meet me somewhere you f--king piece of shit."

Then on Sunday, October 19, 2002, [sic] Hampton visited Touchet at his place of employment to tell Touchet to quit harassing

2

Hampton and stop calling Hampton. Touchet's office within his place of employment has glass walls. When Hampton entered Touchet's office Touchet was seated in his chair with the back of his chair facing Hampton. Touchet rapidly turned his chair towards Hampton and yelled: "F--k you, Hampton." Then a consensual fistic encounter occurred between Touchet and Hampton. David Ragatta [sic] did not observe the events that immediately preceded this fistic encounter.

So those are the factual findings. Now to the analysis of those facts coupled with the applicable law. Touchet's recorded phone messages to Hampton on the 13th of October 2002 constituted an offer from Touchet to Hampton to engage in mortal combat at a time and place to be chosen by either Touchet or Hampton. Touchet never recounted [sic] that offer, never terminated that offer. Touchet's assertion that this was a limited-time offer, limited in time specifically to the date of that offer, is incredulous and I do not believe it.

Touchet's actions once Hampton entered Touchet's office on 19 October 2002 constituted consent to commence mortal combat at that time and place. Because Touchet consented to participate in a fight to the death, Hampton's actions during this fistic encounter were measured – were a measured response taken to prevent the significant harm of loss of life.

Given these findings of fact in this legal analysis this Court finds that Touchet failed to prove that Hampton committed a battery. Hampton, in fact, consented – I'm sorry. Touchet, in fact, consented to the harmful touching by Hampton who accepted Touchet's challenge and spared Touchet's life. Hampton's force application was appropriate given the circumstances and not excessive.

The trial court signed a judgment dismissing Mr. Touchet's suit on February 22, 2008. Mr. Touchet now appeals.

## ASSIGNMENTS OF ERROR

Mr. Touchet asserts two assignments of error:

1. The trial court's findings of fact are contrary to the prior findings of the appellate court and are manifestly erroneous.

2. The trial court's finding that Purvis Touchet consented to Mark Hampton's actions was manifestly erroneous.

3

## DISCUSSION

Under La.Civ.Code art. 2315, a person is liable for acts which cause damage to another. The intentional tort of battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact[.]" *Caudle v. Betts*, 512 So.2d 389, 391 (La.1987). "In a suit for damages resulting from an intentional tort, the claimant must carry the burden of proving all prima facie elements of the tort, including lack of consent to the invasive conduct." *Landry v. Bellanger*, 02-1443, p. 15 (La. 5/20/03), 851 So.2d 943, 954. Mere words will not justify a battery. *Morneau v. Am. Oil Co.*, 272 So.2d 313 (La.1973).

Here, we find the trial court erred in finding that the threats and insults made by Mr. Touchet on Mr. Hampton's voice mail constitute Mr. Touchet's consent to Mr. Hampton's actions nine days later. Mr. Hampton sought out Mr. Touchet at his place of employment, entered Mr. Touchet's office, and hit Mr. Touchet repeatedly until Mr. Raggette pulled Mr. Hampton away. Furthermore, nothing that Mr. Touchet did when Mr. Hampton entered his office can be considered consent. Turning around in his chair, yelling an expletive at Mr. Hampton, and beginning to stand up are not sufficient provocations to rise to the level of giving consent to a battery. The trial court's oral reasons are not an accurate statement of Louisiana law.

Because we find the trial court committed legal error that interdicted the fact finding process and because we find the record to be otherwise complete, we must conduct a de novo review of the record to determine whether there is liability and the amount of damages, if any, that should be awarded. *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742.

4

We find that Mr. Touchet proved that Mr. Hampton committed the intentional tort of battery. Therefore, we find that Mr. Hampton is liable for the damage suffered by Mr. Touchet.

At trial, Mr. Touchet claimed he suffered bruises and abrasion, neck pain, back pain, and severe headaches. Mr. Touchet submitted medical bills in the amount of $9,239.82. We award him that amount. Mr. Touchet also seeks damages for pain and suffering and for the embarrassment he suffered because this incident occurred at his workplace with co-workers and customers watching. We award Mr. Touchet $9,000.00 in general damages for his pain and suffering and $1,000.00 for his mental anguish and embarrassment.

## CONCLUSION

We reverse the trial court's judgment in favor of Mark Hampton finding that Purvis Touchet did not prove lack of consent. We render judgment in favor of Purvis Touchet and find that Mark Hampton committed the intentional tort of battery upon the person of Purvis Touchet. We award medical damages of $9,239.82 and general damages in the amount of $9,000.00 for pain and suffering and $1,000.00 for mental anguish and embarrassment. Costs of this appeal are assessed to Mark Hampton.

**REVERSED AND RENDERED.**