STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-364

WAYNE GUILLOT, ET UX.

VERSUS

REECE GUILLOT, ET UX.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2008-11063 "K"
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and John E. Conery, Judges.

Cooks, J., dissents and assigns written reasons.

Amy, J., concurs and assigns reasons.

**AFFIRMED.**

**James M.Dill**
**The Dill Firm, A.P.L.C.**
**Post Office Box 3324**
**Lafayette, Louisiana 70502-3324**
**(337) 261-1408**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **Reece Guillot**
 **Benjamin Guillot**
 **Guillot Farms**

**Jeffery F. Speer**
**Doucet-Speer, APLC**
**Post Office Box 4303**
**Lafayette, Louisiana 70502-4303**
**(337) 232-0405**
**COUNSEL FOR WAYNE/APPELLANT:**
 **Wayne Guillot**
 **Susan Guillot**

**CONERY, Judge.**

### FACTS AND PROCEDURAL HISTORY

After farming for over thirty years, Plaintiff, Wayne Guillot, left the family farming partnership in February 2006. Wayne and his brother, defendant Reece Guillot, had jointly farmed rice and crawfish, first with their father, and, when he retired, with their own sons. The brothers had grown up and worked together all of their lives, had served as best man at each other's weddings, and had raised their sons together. When Wayne's son left the farming partnership, tension in the family began to escalate. Wayne eventually also left the farming partnership to pursue a career as a crop duster and, at the time of the incident in question, Wayne owned a crop dusting service. With tensions rising between the brothers and their sons, a partition of the real estate owned by the partnership was finalized only months before the incident in question. However, the ownership of all moveables and farm equipment was still highly contested, and would not be settled until after the incident prompting this lawsuit.

While the partition of the farm equipment was still in litigation, on March 16, 2008, Wayne went onto the farm property and, using his own trailer, loaded a crawfish boat[1] used in Reece's crawfish farming operation onto his trailer and then proceeded to leave the property. March 16, 2008 was Palm Sunday, the start of the busiest week of crawfish season, a fact Wayne acknowledged. At the time the crawfish boat was taken from the farm property, Wayne did not yet have his own crawfish pond and would not have been able to use the crawfish boat in crawfish

---

[1] Wayne claimed at trial that he owned the boat and produced a cancelled check to help buttress his claim. However, there was evidence that the boat had always been used in the partnership and, under the law, was still part of the partnership property. When leaving a partnership for any reason, the former partner is not entitled to an interest in the assets of the partnership, but is only entitled to be paid the equal value of the partner's former interest in the property. *See* La.Civ.Code art. 2823.

farming operations until the following season. Wayne acknowledged that crawfish farming was one of the main sources of income for Reece's farm at that time.

A neighbor alerted Reece that Wayne was removing the crawfish boat from the farm property. Reece tried to stop Wayne from taking the boat but Wayne drove around Reece's truck. At some point in the sequence of events, Wayne called his wife, who was at their house, and told her to call the police because he was on his way home with the crawfish boat and Reece was following him. Wayne told her that "[t]here's going to be trouble." While in pursuit of Wayne, Reece alerted his son, Benjamin, his partner in the farming operations and codefendant herein, and told him that Wayne was taking a boat they needed for crawfishing. Benjamin left his house and went in the direction that Wayne and Reece were travelling. Benjamin then blocked the road with his truck to try to stop Wayne from going to his house with the crawfish boat. Wayne went off of the road to get around Benjamin's truck and Benjamin's and Wayne's trucks collided in the process. Wayne was able to get around Benjamin's truck and continue travelling to his home with the boat. Reece and Benjamin followed in close pursuit.

When Wayne arrived home, he parked his truck on his driveway with the crawfish boat in tow. Reece was right behind him and parked on Wayne's driveway in the vicinity of the rear of Wayne's truck and the boat. A fight then ensued near the back of Wayne's truck and the front of Reece's truck. The evidence is in dispute as to the exact location of the men in relation to their trucks and who threw the first punch. Wayne claimed that Reece charged him and hit him first. Reece claimed that Wayne aggressively charged him and hit him first. There is no dispute that Reece struck Wayne in the eye, and Wayne went down. The fight ended with Reece on top of Wayne, and Reece pummeling Wayne until

he tired of swinging. Wayne was hit in the eye and the surrounding area immediately became swollen and discolored. Reece had a bit of blood around his ear. Benjamin arrived as the two brothers were on the ground, with Reece on top, hitting Wayne. Benjamin was not involved in the fight, except as to allegedly egg his father on. Benjamin was sued only for damages to Wayne's truck.

The police arrived and questioned witnesses. Reece left to get a trailer, returned to Wayne's house, put the boat on his trailer, and returned to the farm property with the crawfish boat in tow.

It was later confirmed by Dr. Casanova, Wayne's treating physician, that Wayne suffered from a fracture to the orbital bones around his left eye, requiring surgery. Wayne claims he now has permanent double vision and can no longer perform the duties of a pilot in his crop dusting business. In his brief to this court, Wayne is claiming that he has $7,363.60 in medical bills, $680,000.00 in past lost income at the time of trial, and an annual loss of future earning capacity equal to $130,000.00 in pilot fees because he can no longer fly and has been forced to pay substitute pilots. Wayne claimed that pursuing a flying career was one of the main reasons he left the family farming operation in the first place and also claims past and future mental anguish, pain and suffering.

Wayne had filed suit against Reece for his personal injuries, Benjamin for his property damage, and Farm Bureau Insurance Company, as insurer of Reece and Benjamin. Farm Bureau filed a motion for summary judgment stating that the conduct committed by Reece and Benjamin was excluded under their policy because their actions were intentional. The trial court granted Farm Bureau's

motion, dismissing the insurance company from the suit. The district court's grant of summary judgment was later upheld by a panel of this court.[2]

Wayne's case against Reece and Benjamin proceeded to trial by jury. Using special interrogatories, the jury found that Wayne had "consented" to the intentional battery by Reece, and that Reece was not liable for the injuries to Wayne. Additionally, the jury found Benjamin liable for all damages to Wayne's vehicle due to Benjamin blocking the roadway. Judgment was signed dismissing Wayne's suit against Reece and this timely appeal followed. There was no appeal from the judgment for property damages to Wayne's truck in favor of Wayne against Benjamin, and that issue is not before us.

## ASSIGNMENTS OF ERROR

Wayne asserts the following issues on appeal:

> 1) The jury committed manifest error in concluding that Wayne Guillot consented to the intentional battery he sustained in the face of overwhelming testimony that Reece Guillot was the sole aggressor and that his act was intentional.
>
> 2) The court's jury charges and verdict form constitute a substantive, material legal error, as was objected to by the Plaintiff's counsel, because both in the court's charges, as well as the verdict form, the "aggressor doctrine" was applied wherein any finding of "consent" by the Plaintiff, relieved the defendant of all liability, directly in contravention of Louisiana Civil Code, Article 2323, and the comparative fault laws of this State.

## STANDARD OF REVIEW

Our standard of review is well-established:

> [T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *See generally, Cosse v. Allen-Bradley Co.,* 601 So.2d 1349, 1351 (La.1992); *Housley v. Cerise,* 579 So.2d 973 (La.1991); *Sistler v. Liberty Mutual Ins. Co.,* 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own

---

[2] *Guillot v. Guillot*, 12-109 (La.App. 3 Cir. 6/6/12), 92 So.3d 1212.

4

evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell v. ESCO,* 549 So.2d 840 (La.1989); *Arceneaux v. Domingue,* 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell,* 549 So.2d at 844-45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that 'if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Housley v. Cerise,* 579 So.2d 973 (La.1991) (*quoting Sistler v. Liberty Mutual Ins. Co.,* 558 So.2d 1106, 1112 (La.1990)).

*Stobart v. State through Dep't of Transp. & Dev.*, 617 So. 2d 880, 882-83 (La.1993). *See also Wiley v. Bayou Gaming, Inc.*, 13-1449 (La.App. 3 Cir. 7/2/14), 142 So.3d 1078.

## DISCUSSION

*Assignment of Error One*

In his first assignment of error, Wayne alleges that the jury committed manifest error in finding that Wayne "consented" to the altercation "in the face of overwhelming testimony that Reece Guillot was the sole aggressor and that his act was intentional."

At trial, the jury heard conflicting testimony from Wayne and Reece. The jury also heard testimony from four people who all witnessed portions of the altercation. First to testify was Michael Spaetgens. Mr. Spaetgens is a first cousin to Wayne's wife. He was present at Wayne's house before and during the fight. Mr. Spaetgens testified that he and his wife, Charlotte Spaetgens, had gone to Wayne's house to drop off their camper for a family get-together planned for Easter Weekend. While at Wayne's house, Wayne's wife, Susan, explained that Wayne was not home because he "was going to get his crawfish boat." Mr.

5

Spaetgens stated that he did not realize that anything was amiss until Wayne phoned his wife and told her that Reece was following him home. Mr. Spaetgens testified that Wayne arrived at home pulling a trailer and a crawfish boat. Reece arrived soon thereafter, followed by Benjamin.

On direct-examination, Mr. Spaetgens testified that the two brothers' trucks arrived at the house and were "almost side-by-side." Additionally, Mr. Spaetgens testified that he saw Reece throw the first punch, but never saw Wayne throw a punch. However, on cross-examination, counsel for Defendants established that Mr. Spaetgens had testified in his deposition that the trucks were one behind the other and that Mr. Spaetgens had stated that he never saw any of the punches in the fight.

Mrs. Spaetgens testified that after Wayne parked, Reece "came in behind him and parked like towards the back of the trailer, more towards the side." Mrs. Spaetgens stated that the fight took place "[r]ight behind the back wheel of Wayne's truck." She further testified that she did see Reece punch Wayne first, but did not see any punches after the first until she went between the truck and the trailer and saw Reece on top of Wayne punching him. Mrs. Spaetgens testified that she did not see Wayne punch Reece, however, there was a period of time where she could not see anything between the first punch and when she went in between the truck and the trailer where she saw the back end of the fight.

According to Reece Guillot, when he approached Wayne on the farm property as Wayne was attempting to leave with the crawfish boat in tow, Wayne "ran [Reece] off the road." Reece testified that he followed Wayne and witnessed Wayne run into Benjamin's truck. Further, when Wayne arrived at his house with Reese following close behind him, Reece said that he parked right behind the

trailer of the boat. According to Reece, Wayne then went after him "like a crazy man." Reece testified that Wayne then threw the first punch and hit him in the ear, causing it to bleed. Reece claimed that he only threw one punch in self-defense.

Wayne's wife, Susan, testified that she saw Reece "raise his fist," but that there was a truck between the altercation and her view. After Susan saw Reece raise his fist, she saw no other swings either from Wayne or Reece between the first swing and the time that Wayne hit the ground.

Benjamin testified that after being informed that Wayne was taking the crawfish boat from the farm property, he blocked the road in an attempt to get Wayne to stop. Benjamin claimed that Wayne rammed his truck to get by. Benjamin testified that he then followed Wayne and Reece to Wayne's house. According to Benjamin, when he pulled up at Wayne's house, he saw the brothers exiting their vehicles and saw Wayne running towards Reece. Benjamin further testified that when he reached them, the brothers were on the ground in front of Reece's truck, *behind* Wayne's truck, the trailer, and the crawfish boat. Benjamin testified that he did not see the punches that led to the brothers on the ground and only saw that his father had Wayne in a head lock and was "[j]ust slapping him with a worn out hand, tired man, tired old man on the ground."

According to Wayne, he was intending to crawfish that year to supplement his income. He admitted, however, that he had yet to plant rice and therefore had not yet flooded the field for crawfishing, a time consuming process necessary for crawfish farming as acknowledged by all parties. Wayne stated that when he loaded up the crawfish boat on the farm property, he saw Reece coming very fast and knew there would be a confrontation. Wayne stated that he tried to avoid the inevitable and drove around Reece and headed to his own house. However, Reece

7

followed right behind him. Travelling only a little faster than normal, Wayne called his wife and told her to call the police and tell them to meet him at his house. Benjamin then blocked the highway with his own truck. Wayne claimed that he drove off of the road and maneuvered around Benjamin, striking the left bumper of Benjamin's truck. According to Wayne, once at his house, Reece allegedly "rushed" towards him and threw the first punch, which landed on Wayne's left eye. Wayne claims that he went down and did not throw one punch at his brother. He was told that Reece jumped on top of him and pummeled him until Reece tired of swinging, but Wayne has no direct recall of what happened after the first punch.

Louisiana has a comparative fault system.

In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

La.Civ.Code art. 2323(A).

Comparative fault does not apply when one "consents" to a battery, however. The law of consent is well-established. Our supreme court stated, "Consent may be expressed or implied; if implied, it must be determined on the basis of reasonable appearances." Cole v. State Dep't of Pub. Safety & Corr., 01-2123, p. 11 (La. 9/4/02), 825 So. 2d 1134, 1142. Further, "When a person voluntarily participates in an altercation, he may not recover for the injuries which he incurs,

8

unless force in excess of that necessary is used and its use is not reasonably anticipated." *Id.* at 1143.

Even more relevant in this case, "The defense of consent in Louisiana operates as a bar to recovery for the intentional infliction of harmful or offensive touchings of the victim." *Id.* at 1142; *see also Touchet v. Hampton*, 06-1120 (La.App. 3 Cir. 2/7/07), 950 So.2d 895; Frank L. Maraist, H. Alston Johnson III, Thomas C. Galligan, Jr., & William R. Corbett, *Answering a Fool According to His Folly: Ruminations on Comparative Fault Thirty Years On,* 70 LA. L.REV. 1105, 1107 (2011). "When two parties expressly or impliedly agree to fight the consent of one is not vitiated merely because the other strikes the first blow." *Richard v. Mangion*, 535 So.2d 414, 416-17 (La.App. 3 Cir. 1988).

Wayne admitted that he had no immediate use for the boat, yet he went on the farm property that no longer belonged to him and took the boat anyway. Wayne also admitted that he knew the second that he started leaving the property with the crawfish boat and saw Reece coming towards him that "[t]here's going to be trouble." He called his wife in route and requested that she call the police. Once arriving home with the boat in tow, Wayne voluntarily exited the vehicle. Had he wanted to avoid the altercation that he stated he knew was inevitable, he could have gone inside the house or remained in the vehicle and waited for the police to arrive. Furthermore, while there is conflicting testimony as to exactly where the actual fight took place, the evidence shows that at the very least, the brothers confronted each other near the rear of Wayne's truck. Wayne would have had to exit his truck and take steps to move in the direction of Reece, even if the exact number of steps he took is debated.

9

There is little doubt that the record shows that Reece was wrong to follow Wayne to his house and confront Wayne in his own driveway, striking Wayne, jumping on top of Wayne, and continuing to strike him while he was down. Likewise, there is no doubt that Wayne was wrong to go to the farm property and take a crawfish boat for which he had no immediate use when Wayne knew full well that Easter week was the peak of crawfish season and the boat was needed by Reece for the harvest. After he took the boat and arrived at his house, Wayne could also easily have remained in his truck or entered his home when he arrived there. Instead, he walked (or ran) to the back of his truck and confronted Reece.

Thus, the record reflects that the jury had sufficient evidence on which to base its verdict that Wayne consented to the altercation. While it may be argued that Reece used excessive force when he jumped on top of Wayne, the weight of the evidence was that Wayne's eye was injured by Reece's first punch. Wayne claimed he had no memory of what happened after the first punch.

As previously discussed, Louisiana law is clear that when a party legally consents to an altercation, there is no basis for recovery for an intentional tort. The trial court gave the following instruction on consent:

> In a suit for damages resulting from an intentional tort, the claimant must carry the burden of proving all prima facie elements of the tort, *including lack of consent to the invasive conduct*, and, in turn, the defendant may seek to prove that he is without fault because his actions were privileged or justified, such as self-defense.

> Accordingly, if you find that the defendant committed a battery upon the plaintiff, but you also find that the plaintiff consented to the fight that produced the battery, then you must return a verdict for the defendant, unless you find that the force used by the defendant is not reasonably anticipated and is in excess of that necessary for self-defense.

(Emphasis added.) The jury verdict form had the following interrogatory:

10

(1) Did Wayne Guillot consent to being struck, hit, and/or punched by Reece Guillot?

____YES   ____NO

*If "yes," please proceed to No. 6. If "no," please proceed to No.2.*

The foreman put an "X" in the blank in front of "YES." No.6 read:

(6) Please stated the percentages of fault stemming from each parties' involvement in the automobile collision at issue:

Benjamin Guillot   ____%

Wayne Guillot     ____%

The foreman marked "100" behind Benjamin Guillot.

In his first assignment of error, Wayne asserts that there was "overwhelming testimony" that Reece was the sole aggressor. As stated above, when considering the testimony of the five adults present during the altercation, it is far from clear that Reece was the sole aggressor. Each person's testimony differs. Most witnesses did not have a clear view of the fight after the first punch was thrown. The jury was present during the testimony of each witness and concluded based on all the evidence presented that Reece was not the sole aggressor and that Wayne consented to the fight, hence no recovery. Though we may disagree and may have decided the case differently had we been the factfinder, our job is to examine the record to see if there is a reasonable basis for the jury's conclusion. In doing so, we must also scrutinize the record to insure that no error of law occurred that may have impacted the verdict.

Here, we find that the facts were in dispute and it was within the jury's discretion to find against Wayne, based on the law of consent. "[W]hen there are two permissible views of the evidence, the factfinder's choice between them

11

cannot be manifestly erroneous." *Ardoin v. Firestone Polymers, L.L.C.*, 10-245, p. 6 (La. 1/19/11), 56 So.3d 215, 219. We must find, under the law, that Wayne's first assignment or error lacks merit.

*Assignment of Error Two*

The next question presented is whether there was an error of law that may have impacted the jury's verdict. Here, we look to the propriety of the jury charges and whether any objections as to the law given by the judge to the jury were adequately preserved for our appellate review. In Wayne's second assignment of error, he alleges that the trial court gave erroneous jury charges and used the wrong verdict form. Wayne argues on appeal that the jury charges and verdict form provided that consent was a complete bar to recovery, in direct contravention of the comparative fault laws of this state.

Louisiana Code of Civil Procedure Article 1793(C) provides, "A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating *specifically* the matter to which he objects and the grounds of his objections." (Emphasis added.) *See Breaux v. La. Patient's Comp. Fund*, 12-878 (La.App. 3 Cir. 2/6/13) (unpublished opinion). In this case, Wayne's attorney objected to the jury charges, stating:

> We object to the removal of the proposed language in charges stating "When the defendant's actions are intentional, any negligence on the part of the Plaintiff cannot be considered." And we object to the exclusion of any similar language to that effect under Landry v. Bellanger, 851 So.2d. That case states that Civil Code Article 2323(C) is not applicable when the Plaintiff's actions were intentional as opposed to merely negligent. This case does not hold, as defendant suggests, that 2323(C) is not applicable in battery cases.
>
> Furthermore, there are multiple actions in this case which the jury may consider negligent as opposed to intentional and it would be

12

legal error for the jury to be allowed to consider any actions which were not intentional, but merely negligent.

> "Intent" means that the actor either consciously desires the physical result of his actions; or knows that the result is substantially certain to follow from his actions. Defendants will undoubtedly argue that certain actions of Wayne were provocative and should serve to reduce their percentage of fault. However, should the jury decide that Wayne not desire or be substantially certain that an actual physical fight would occur as a result of his actions, then they are merely negligent and it is legal error for the jury to consider them. And it is legal error not to charge the jury on these points of law.

Wayne's counsel did not specifically request that the comparative fault language be added to the jury instructions, but instead argued that the court should instruct the jury that it could not consider any *negligent* conduct on behalf of Wayne. Considering counsel's confusing objection to the jury instructions and our reading of *Landry v. Bellanger*, 02-1443 (La. 5/20/03), 851 So.2d 943, we will again address Wayne's concerns regarding the applicability of comparative fault to the law of consent.

In *Landry*, our supreme court dealt with the issues of self-defense, consent, and the aggressor doctrine and how each is affected by comparative fault. Unlike self-defense and consent, the supreme court in *Landry* held that the aggressor doctrine is a victim-fault defense baring recovery, a result that comparative fault was meant to do away with. *Id.* at 952. The supreme court held:

> [T]he fault of all persons causing or contributing to injury, regardless of the basis of liability, is to be determined, and, if a negligent Plaintiff is injured as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced by his percentage of fault.

*Id.* at 953. *See also* La.Civ.Code art. 2323. Further, "it is appropriate to consider each party's respective fault when a matter involves intentional tortfeasors." *Id.* at 954. However, in *Landry*, the supreme court went on to state, "consent means the

defendant did not commit a tort." *Id.* at 952. The supreme court then quoted with approval from a well-written legal treatise, "On this analysis the percentage-fault approach should replace both the aggressor doctrine and the mitigation doctrine, *while leaving the full defenses of consent and privilege intact*. *Id.* (emphasis added) (quoting David Robertson, *The Louisiana Law of Comparative Fault: A Decade of Progress,* 1 Louisiana Practice Series 5 (Louisiana Judicial College, 1991)). Our reading of *Landry* is that the supreme court specifically held that comparative fault does apply, except in cases involving the defense of *consent*, or the existence of a privilege, like self-defense.

There is a sufficient basis in the record for the jury to have concluded that Wayne consented to the altercation as soon as he exited his vehicle and took steps in Reece's direction. Arguably, he consented when he first took the boat and told his wife to call the police, "[t]here's going to be trouble." Wayne expressed consent with his movements toward Reece and his prior knowledge that trouble was on the horizon, which, if found to be the case factually, operated as a complete bar to potential recovery for his damages. *See Landry*, 851 So.2d 943; *Touchet*, 950 So.2d 895. Thus, in line with *Landry*, the trial court did not err in instructing the jury that "if you find that the defendant committed a battery upon Wayne, but you also find that Wayne consented to the fight that produced the battery, then you must return a verdict for defendant."

While admittedly this jury instruction may be yet another step away from the pure comparative fault doctrine that the Louisiana Legislature had adopted, it is a step we must follow, at least under our supreme court's interpretation of the defense of consent to an intentional battery as expressed in *Landry*.

14

Moreover, we could find no objection to the jury verdict form in the record. Failure to object to the verdict form operates as a bar to a claim that the verdict form was erroneous. La.Code Civ.P. art. 1793. While we may disagree with the final verdict in this case, especially since both brothers seemed to have taken the law into their own hands, we find that there was no error of law to which a valid objection had been filed that impacted the verdict. Each side had a good attorney arguing their respective case. The judge properly charged the jury. The jury had a very difficult job and had to weigh conflicting evidence. Like the trial judge and jury, we must follow the law as interpreted by our supreme court. We find that Wayne's assignment of error two also lacks merit based on the defense of consent.

## CONCLUSION

Under the law as interpreted by our supreme court in Landry, we affirm the jury's verdict that Wayne Guillot consented to the altercation and that the trial court did not err in instructing the jury that a finding of consent was a complete bar to recovery. The judgment of the trial court is affirmed. All costs of this appeal are assessed to Wayne Guillot.

**AFFIRMED.**

# COURT OF APPEAL, THIRD CIRCUIT

## STATE OF LOUISANA

### 14-364

**WAYNE GUILLOT, ET UX.**

**VERSUS**

**REECE GUILLOT, ET UX.**

**COOKS, J. Dissents.**

Wayne Guillot (Wayne) and Reece Guillot (Reece) are brothers who got into a physical altercation on Wayne's property as a result of Wayne removing a crawfish boat from the premises owned by a family partnership. Reece was a member of the partnership and was using the boat in the on-going crawfish farming operations of the partnership. When a neighbor alerted Reece to Wayne's activity, Reece pursued Wayne in an apparent effort to stop him. Reece's son, Benjamin Guillot (Benjamin), in an effort to assist his father blocked the public roadway with his vehicle. Attempting to dodge Benjamin's vehicle, Wayne collided with it but managed to continue travelling to his home. *En route* to his home, with Reece and Benjamin in hot pursuit, Wayne telephoned his wife and instructed her to telephone the police because he knew "there was going to be trouble." Wayne arrived at his home followed closely by Reece and Benjamin. Reece arrived immediately behind Wayne and parked on Wayne's driveway, at his home, behind Wayne's truck and trailer. Wayne and Reece got into a fist fight in the area between the rear of Wayne's boat trailer and the front of Reece's truck. The eyewitnesses' testimony varies as to the exact location of the two men relative to their vehicles but all agree it was in the area at the rear of Wayne's truck/trailer on Wayne's property. The testimony also varies as to who threw the first punch. It is

1

without dispute that Reece, while uninvited on Wayne's property, struck Wayne in the eye, knocked him to the ground, and kept swinging until he could no longer physically continue hitting Wayne. Wayne sued Reece for his personal injuries due to alleged permanent damage to his eye; Benjamin for property damage to his vehicle; and Farm Bureau as the insurer of both. Farm Bureau was dismissed on summary judgment. That ruling was upheld by a panel of this court in *Guillot v. Guillot*, 12-109 (La.App. 3 Cir. 6/6/12), 92 So.3d 1212 (emphasis added) which held:

> Having reviewed the record and the jurisprudence, we find that the policy language excluding the expected or unexpected results of an intentional act from coverage is a valid exclusion and has been upheld in numerous instances. See *Richard v. Brasseaux, 50 So.3d 282; Perkins v. Shaheen, 867 So.2d 135; Fontenot v. Duplechine, 891 So.2d 41.* The Farm Bureau homeowner's and farm liability policies unambiguously excluded coverage for Wayne's injuries **resulting from the intentional actions of Reece and Benjamin**. Likewise, the umbrella policies unambiguously excluded coverage for Wayne's injuries **resulting from the intentional actions of Reece and Benjamin**. Therefore, we find no coverage under the automobile, homeowners', farm, and umbrella policies written by Farm Bureau in effect at the time of the incident at issue herein. Accordingly, we find there is no genuine issue of material fact, and the trial court's grant of summary judgment is affirmed.

The jury found Reece was not liable for any injury to Wayne because Wayne's recovery was barred by his "consent." It found Benjamin liable for all damages to Wayne's vehicle *caused by Benjamin's intentional acts*. Benjamin did not appeal the judgment against him. Wayne appeals the judgment dismissing his suit against Reece.

The majority affirms the jury verdict based upon its understanding of the Louisiana Supreme Court's language in *Landry v. Bellanger*, 02-1443 (La. 5/29/03), 851 So.2d 943, that consent is a complete bar to recovery. The majority also bases its decision on the holding in *Richard v. Mangion*, 535 So. 2d 414

2

(La.App. 3 Cir. 1988) in which a panel of this court held: "When two parties expressly or impliedly agree to fight, the consent of one is not vitiated merely because the other strikes the first blow." In *Landry*, the supreme court held:

> Louisiana's intentional tort doctrine has traditionally afforded an intentional tortfeasor a full defense if he can establish consent, privilege or self-defense, or enough provocation to trigger the aggressor doctrine …
>
> . . . .
>
> Hence, the existence of consent means the defendant did not commit a tort and the existence of a privilege means the defendant's tort was justified. (citation omitted) Conversely, Louisiana's aggressor and mitigation doctrines are victim-fault defenses. Neither theory implies that no tort has occurred or that the defendant's conduct was justified, but instead, seek to penalize the victim. As Robertson then points out "On this analysis the percentage-fault approach should replace both the aggressor doctrine and the mitigation doctrine, while leaving the full defenses of consent and privilege intact. In this way the comparative fault principles will be confined to the job they were designed to do – taking victim fault into account." (citation omitted)
>
> . . . .
>
> In a suit for damages resulting from an intentional tort, the claimant must carry the burden of proving all prima facie elements of the tort, including lack of consent to the invasive conduct. In turn, the defendant may seek to prove that he is without fault because his actions were privileged or justified, such as self-defense. Self-defense, unlike the aggressor doctrine, is a true defense in that it operates as a privilege to committing the intentional tort.

*Landry* , 851 So.2d at 952, 954.

The majority examines all of the conflicting testimony at trial. It finds the record supports a reasonable factual basis upon which the jury, weighing the credibility of all of the conflicting witnesses before it, could conclude that Wayne failed to carry his burden to prove lack of consent. Moreover, the majority finds there are some facts which can be gleaned from the record which are not the subject of conflicting testimony. Wayne admits he had no immediate use for the

3

boat. He also admits he knew "the second" he left Reece's property with the boat "there was going to be trouble." There is no dispute that the event occurred during the busiest week of crawfish season for Reece as an active crawfish farmer while Wayne was not engaged in crawfishing at the time. Wayne admits he called his wife and told her to call the police.

The majority reasons that when Wayne arrived at his home he could have chosen to avoid an altercation with Reece. It suggests Wayne could have either remained in his vehicle until the police arrived, or gone directly into his house, but instead, he chose to walk to the rear of his truck and boat trailer toward Reece. There is no conflict in the evidence as to the fact that Wayne had to exit his truck and take a number of steps moving in the direction toward Reece to reach the rear of his vehicle even if the number of steps is debatable says the majority. The majority also finds the record establishes Reece was wrong to follow Wayne to his home and confront him in his own driveway. Recognizing these facts, the majority nevertheless finds the jury had sufficient evidence to reasonably conclude that Wayne consented to the altercation in which he was injured. The majority also finds that although Reece may have used excessive force in continuing to hit Wayne, the weight of the evidence supports a finding that it was the first blow struck that injured Wayne's eye.

Although the majority notes that this court may disagree with the jury, and may have reached differing factual conclusions, it finds we must defer to the jury's discretion where the record establishes a reasonable basis for the jury's findings of fact, citing *Ardoin*: "When there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous."

The majority finds Wayne's "objection" to the jury charges was confusing, but nevertheless addresses Wayne's assertions regarding the applicability of comparative fault to the law on consent. The majority concludes that *Landry* clearly holds comparative fault does not apply in cases involving the defense of consent or the existence of the privilege of self-defense. It also concludes there is a sufficient basis in the record upon which the jury could reasonably conclude Wayne consented to Reece's intentional tort noting that Wayne consented to the altercation as soon as he exited his vehicle and took steps toward Reece. It further finds Wayne arguably consented when (1) he took the boat, which the majority finds the ownership of to be unresolved at the time Wayne took possession of it from the family partnership property, and (2) told his wife to call the police because there was going to be trouble. Thus, reasons the majority, Wayne impliedly expressed consent by these actions and again with his movements toward Reece at his home knowing trouble was on the horizon. The majority concludes that the jury instruction which read: "if you find the defendant committed a battery upon Wayne, but you also find that Wayne consented to the fight that produced the battery, then you must return a verdict for defendant," is in line with its reading of the holding expressed by the supreme court in *Landry* and we are bound to follow that holding. The majority admits it is troubled by the fact that both brothers seemed to have taken the law into their own hands, but maintain that the jury and this court must follow the law as interpreted by the Louisiana State Supreme Court and as understood by the majority. Thus, the majority opines, that we cannot disturb the jury's finding of facts which lead to the conclusion that Wayne consented to the altercation and this consent is a complete bar to recovery.

5

I respectfully do not agree with the majority's reasoning nor with its ultimate conclusions.

In *Guillot v. Guillot*, 12-109, P. 9(La. App. 3 Cir. 6/6/12), 92 So.3d 1212, 1217 (emphasis added) this court held "The Farm Bureau homeowner's and farm liability policies unambiguously excluded coverage for Wayne's injuries resulting from the ***intentional actions* of Reece and Benjamin**." Thus, this court previously held that the same actions by Reece and Benjamin at issue in this case, which were addressed in the prior case, *constitute intentional torts*. As such, Reece and Benjamin cannot escape liability for any injuries to Wayne which resulted from Reece's intentional physical attack on Wayne unless Wayne consented to the battery inflicted upon him by Reece.

The evidence clearly shows that Reece and Benjamin acted in concert to intentionally attack Wayne after he retreated from them and sought sanctuary on his own property. As the majority points out, Wayne tried to summon the police in fear that trouble was about to erupt. Before the police could arrive, Reece and Benjamin followed Wayne onto his own property where Reece set upon him and beat him until he was too tired to continue the battery. Wayne alleges he was seriously injured and that his injuries have caused him significant damages. With all due respect, I believe the majority's understanding that *Landry* constrains this court to excuse Reece and Benjamin's intentional tort because Wayne "consented" to such injury is not consistent with *Landry*, Civil Code article 2323(C), the jurisprudence and other laws discussed below.

Louisiana Civil Code article 2323(C) (emphasis added) provides:

C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own

6

negligence **and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages** *shall not be reduced*.

On the issue of consent, *Landry* merely recognized "lack of consent" as an element of a plaintiff's burden to prove a prima facie case of intentional tort:

> In a suit for damages resulting from an intentional tort, the claimant must carry the burden of proving all prima facie elements of the tort, including lack of consent to the invasive conduct. In turn, the defendant may seek to prove that he is without fault because his actions were privileged or justified, such as self-defense. Self-defense, unlike the aggressor doctrine, is a true defense in that it operates as a privilege to committing the intentional tort. In such a case, a plaintiff's conduct must have gone beyond mere provocation under the aggressor doctrine. Under Louisiana jurisprudence, in order to succeed on a claim of self-defense (not involving deadly force), there must be an actual or reasonably apparent threat to the claimant's safety and the force employed cannot be excessive in degree or kind. (citation omitted) The privilege of self-defense is based on the prevention of harm to the actor*, not on the desire for retaliation or revenge, no matter how understandable that desire.* (citation omitted) Furthermore, the prevailing view in almost every one of our sister states is:

> > Threats and insults may give color to an act of aggression, but in themselves, they do not ordinarily justify an apprehension of immediate harm, and the *defendant is not privileged to vindicate his outraged personal feelings at the expense of the physical safety of another…*

*Landry* , 851 So.2d at 954, 955.

In *Landry*, the court found Mr. Landry first provoked Mr. Bellanger after Landry's unrelenting verbal provocations turned to physical, aggressive pushing of Bellanger, coupled with continued threats of physical violence. Once outside the bar, Landry again pushed Bellanger, threatening physical violence to which Bellanger responded with one punch. The state supreme court found Bellanger's response to Landry's aggression was "legally permissible self-defense" which was justified under those circumstances. "Because Landry followed his verbal

provocations with physical confrontations, Bellanger was justified in striking a blow to defend himself. Under all these circumstances, we find that Bellanger acted in self-defense and was not at fault in causing Landry's damages." *Id.* at 956. The case was not decided on consent or lack thereof, and sheds little light on what constitutes consent. It does however, highlight the notion that:

> *[a] defendant is not privileged to vindicate his outraged personal feelings at the expense of the physical safety of another…*

*Id.* at 955.

Louisiana law does not permit self-help, a legal maxim applicable to both Reece and Wayne in the instant case. Wayne may have acted improperly in his self-help taking of the boat from Reece's property, but, as the majority acknowledges, ownership of the boat was still in dispute. Reece clearly tried to engage in self-help by following Wayne onto his own private property as a trespasser, presumably to retrieve partnership property for which he had an immediate use. Reece enlisted the help of his son, Benjamin, to physically threaten and menace Wayne on the public roadways by blocking the roadway and causing a collision from which Wayne extricated himself, and proceeded home in continued retreat from his assailants. Nothing in the law permitted Reece and his cohort Benjamin to physically attack Wayne at his home after he retreated to its safety and summoned the police for help. **In this scenario there is no element of either express or implied consent on Wayne's part.** He did not agree to get in the ring and duke it out with Reece, in which case he could be said to have expressly consented to his injury. Nor does the evidence establish that Wayne impliedly consented to the batteries perpetrated by Reece and Benjamin. Instead, the evidence shows without contradiction that he fled from Reece and his son to

8

the safety of his own home even after being physically attacked by Benjamin using his vehicle on a public roadway to attack Wayne. In this case, there is no evidence that Wayne was the aggressor such as might excuse Reece's behavior. To the contrary, Reece and his son aggressively pursued Wayne while he was in full retreat and followed him onto his own property where Reece perpetrated an intentional tort, battery, upon Wayne, apparently motivated by "revenge" or "retaliation" for the removal of the crawfish boat from the partnership property. As the court said in *Landry*: "The privilege of self-defense is based on the prevention of harm to the actor, not on the desire for retaliation or revenge, no matter how understandable that desire," *Id*., i.e., even if your brother takes a crawfish boat you have need of, on Palm Sunday weekend in south Louisiana, you do not enjoy the right to attack him at his own home and commit a battery upon his person. Reece did not act in self-defense. His actions, as previously determined by this court, constituted an intentional tort for which he had no lawful excuse which would preclude his liability under the express provision of La.Civ.Code art. 2323(C).

Reece's intentional tort precludes any assignment of fault to Wayne for his injuries at the hands of Reece and his son absent Wayne's express or implied consent. Furthermore, as to Benjamin's liability, his actions are governed by the provisions of La. Civ. Code art 2324(A): "He who conspires with another person to commit a intentional or willful act is answerable, in solido, with that person, for the damages caused by such act." It was inconsistent for the jury to conclude that Benjamin is liable to Wayne for his intentional tortious conduct but to then conclude that his co-conspirator, Reece, is not liable for his intentional battery of Wayne. Wayne no more "consented" (directly or by implication) to Benjamin's

9

intentional tort than to Reece's. The majority fails to recognize this glaring inconsistency and offers no explanation to reconcile these competing findings.

Louisiana law mandates, and *Landry* and cases following make clear, that "In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss *shall be determined…*" *Id*. at 952. Thus, the proper resolution of this case involves a determination of each party's degree of fault, but, under the provisions of La.Civ.Code art. 2323(C), even *if* Wayne, due to his own negligence, is partly to blame for the intentional tort inflicted upon him, his degree of fault cannot be used to reduce his damages caused by intentional tortfeasors such as Reece and Benjamin. In this case, the court must determine the degree of fault shared by Reece and Benjamin for Wayne's injuries and Wayne must, of course, prove his damages.

In *Touchet v. Hampton*, 08-833 (La.App. 3 Cir. 12/11/08), 1 So.3d 729, a panel of this court addressed the issue of intentional tort and consent as a defense. Mr. Touchet was an employee of Hampton Mitsubishi, a car dealership owned by Mr. Hampton. Some months after he was terminated, Touchet telephoned Hampton at the dealership and "made fun of" *Id*. at 730, the business because sales were down. Hampton hung up the phone but Touchet called back. Hampton would not take the call. Touchet later placed another call, and when he spoke to Hampton he "cursed him, threatened him, and told him he knew where he lived." *Id*. Touchet kept calling Hampton and began leaving threatening messages on his voice mail. Hampton had enough and decided to confront Touchet in person at his new place of employment, Jackie Edgar RV Center. On Hampton's first visit Touchet was not there. Hampton made a second visit and this time he confronted

10

Touchet in his office. When Hampton entered Touchet's office, unannounced, Touchet's back was turned, and upon hearing Hampton's voice, Touchet turned toward him in his chair and "yelled "F[--k] you, Hampton," *Id.* According to Hampton, this reaction by Touchet startled him and placed him in fear that "Touchet was going to hit [him and do] what he said he was going to do." *Id.* Hampton asserted that he then "defended himself by hitting Touchet [and] although he did not know how many times he hit Touchet, Hampton surmised that the incident lasted approximately twenty seconds before Touchet's co-worker, David Raggate, intervened and pulled Hampton off Touchet. Hampton immediately left the premises." *Id.* The trial court found Hampton acted in self-defense. This court reversed, reasoning that:

> Under La.Civ.Code art. 2315, a person is liable for acts which cause damage to another. **The intentional tort of battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact**[.]" *Caudle v. Betts*, 512 So.2d 389, 391 (La.1987). "In a suit for damages resulting from an intentional tort, the claimant must carry the burden of proving all prima facie elements of the tort, including lack of consent to the invasive conduct." *Landry v. Bellanger*, 02-1443, p. 15 (La.5/20/03), 851 So.2d 943, 954. Mere words will not justify a battery. *Morneau v. Am Oil Co.*, 272 So.2d 313 (La. 1973).

*Touchet*, 1 So.3d at 732. (emphasis added)

*This court found that nothing Touchet did constituted consent to a battery.* Touchet, like Wayne in this case, initiated the chain of events, but Touchet was not deemed to have consented to Hampton's battery in response. Likewise, Wayne cannot be said to have expressly or impliedly consented to Reece's and Benjamin's batteries by virtue of initiating the chain of events.

> Mr. Hampton *sought out Mr. Touchet at his place of employment*, entered Mr. Touchet's office, and hit Mr. Touchet repeatedly until Mr. Reggette pulled Mr. Hampton away. Furthermore, nothing that Mr. Touchet did when Mr. Hampton entered his office can be considered

11

consent. Turning around in his chair, yelling an expletive at Mr. Hampton, and beginning to stand up are not sufficient provocations to rise to the level of giving consent to a battery.

*Id*. (emphasis added)

Additionally, nothing Wayne did once on his own property after retreating from Reece and Benjamin's roadway attack, can be said to constitute consent to Reece's relentless battery, inflicted upon Wayne until Reece was too tired to continue. In *Fricke v. Owens-Corning Fiberglass Corporation*, 571 So.2d 130, 132 (La.1990) (emphasis added), the state supreme court noted: " '**All intended wrongs have in common the element that they are inflicted without the consent of the victim.**' *Doe v. Breedlove*, 04-06, p. 11 (La. App. 1 Cir. 2/11/05), 906 So.2d 565, 572." Additionally, as the First Circuit stated in *Doe*: "The defendant's intention [when committing a battery] need not be malicious nor need it be an intention to inflict actual damages. It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent. [*Landry* 851 So.2d at 949]." *Id.*

Addressing the issue of the exclusion of insurance coverage for intentional torts, the state supreme court in *Yount v. Maisano*, 627 So.2d 148, 152 (La. 1993), stated: "we hold that where an insured sets out to commit a battery on another individual and repeatedly strikes him in the face with both fists and kicks him repeatedly in the face, the resulting broken facial bones and other facial injuries are either intended by the insured or the insured must know that such injuries are substantially certain to result." In *Le v. Nitetown, Inc*. 10-1239 (La.App. 3 Cir. 7/20/11), 72 So.3d 374, *writ denied* 11-1826 (LA. 11/4/11), 75 So.3d 924, this court addressed the application of La.Civ.Code art. 2323(C), to the victim of an intentional tort, when the victim is also found partly negligent for his injuries. In

12

*Le*, the court found the bouncers at the bar committed the intentional tort, battery, upon Le, but also found Le twenty-percent negligent in causing his injuries. We held:

> Under the clear meaning of La.Civ.Code art. 2323(C), there is no reduction in Mr. Le's award where he was the victim of an intentional tort, and it is of no moment that the intentional tortfeasor was also found negligent in some degree. Comparing the negligent fault of an injured party with the intentional actions of the party inflicting the injuries is no longer appropriate. This was not the intent of the legislature when it rewrote La.Civ.Code art. 2323 in 1996, specifically adding subsection (C) prohibiting a reduction of the plaintiff's damages in intentional tort scenarios.
>
> In November of 1994, shortly before the legislature's 1996 revision to Article 2323, the Louisiana Supreme Court articulated its agreement on the differing nature of certain kinds of conduct and the difficulty of comparison:
>
> > [A]s Dean Prosser has explained it, intentional wrongdoing "differs from negligence not only in degree but in kind, and in the social condemnation attached to it." Prosser and Keeton on the Law of Torts § 65, at p. 462 (5th Ed. 1984) . . . . Because we believe that intentional torts are of a fundamentally different nature than negligent torts, we find that a true comparison of fault based on an intentional act and fault based on negligence is, in many circumstances, not possible.
>
> *Veazey v. Elmwood Plantation Associates, Ltd.*, 93-2818 (La. 11/30/94), 650 So.2d 712, 719-20.
>
> The court in *Veazey* went on to explain that, given the then-existing statutory scheme, comparative fault law as it existed at the time in Louisiana was broad enough "in an appropriate factual setting to encompass the comparison of negligent and intentional torts," but it questioned "whether such a comparison *should* be made." *Id*. at 718 (emphasis added). Ultimately, the court left it to the discretion of the individual courts to determine "in what contexts the doctrine of comparative negligence should be applied," on a case-by-case basis. *Id*. at 720.
>
> Thereafter, in 1996, the statutory scheme changed with the rewriting of La.Civ.Code art. 2323 and its heading, specifically adding section (C) *prohibiting* the reduction of a negligent plaintiff's damages where part of the fault was that of an intentional tortfeasor. Section (A) calls for a determination of the fault of all participants in

an incident, whether a party or non-party, whether insolvent or immune, such as an employer, a bankrupt, an unknown, or a previously settled and released defendant. Section (B) makes it clear that section (A) applies to all theories of liability, such as negligence, product liability, premise liability, malpractice, and so forth; and it can be extrapolated from (A) and (B) that the fault of two or more intentional actors can be compared in allocating liability between them for payment of a plaintiff's damages. *See Landry v. Bellanger*, (citation omitted).

Section (C), however, provides a very specific and clear mandate in the case of intentional torts, that *the plaintiff's "claim for recovery of damages shall not be reduced," even if his negligence is part of the cause of his damages.* La.Civ.Code art. 2323(C). *In other words, the negligence of the plaintiff cannot be used to reduce his recovery if part of his damages are caused by an intentional tortfeasor.*

As the *Landry* court stated,

It is appropriate to consider each party's respective fault when a matter involves intentional tortfeasors. In prohibiting the reduction of a negligent plaintiff's damages, article 2323 (C) reflects a legislative determination that on the continuum of moral culpability, the act of an intentional actor should not benefit from a reduction in the damages inflicted on a less culpable negligent actor.

*Landry v. Bellanger*, 851 So.2d at 954. Such an application "furthers public policy by preventing an intentional tortfeasor from using the comparative fault regime to reduce his own obligation to compensate a less culpable victim." *Id.*

*Le*, 72 So.3d at 377-78.

Applying the holdings of the above cited cases, there can be no question that Reece's physical attack on Wayne was an intentional tort, as this court has previously held. While it may be that Wayne may have engaged in negligent acts, his recovery cannot be reduced. Reece claims, and the majority finds reasonable support for the jury's finding that, Wayne consented to the battery inflicted upon him and is thus barred from any recovery, but the record does not support that finding.

The defense of consent in Louisiana operates as a bar to recovery for the intentional infliction of harmful or offensive touchings of the victim. *Andrepont v. Naquin*, 345 So.2d 1216 (La.App. 1 Cir. 1977), 345 So.2d 1216. Consent may be expressed or implied; *if implied, it must be determined on the basis of reasonable appearances. Id*. at 1219.

*Cole v. Department of Public Safety and Corrections*, 01-2123, p. 10 (La.9/4/02), 825 So.2d 1134, 1142 (emphasis added).

In *Cole*, the state supreme court addressed the issue of consent in the context of a work-related injury to a corrections officer. The claimant was injured when he was struck during a training exercise with an unpadded baton. The court found that Cole had not consented to the battery. He had not expressly consented by signing any consent form, and no one "elicited Cole's consent." *Id.* The mere fact that Cole volunteered to participate in the training exercise did not equate to his consenting to a battery on his person of the type and degree inflicted. Under the facts in that case there were no facts which created a "reasonable appearance" that Cole impliedly consented to a battery of his person. Likewise, under the facts as detailed by the majority, nothing creates a "reasonable appearance" that Wayne, who made a hasty retreat to his residence after being accosted on the public roadway by Benjamin, who told his wife to summon the police for help, and who, upon arriving on his own property moved toward Reece (a trespasser), gave express or implied consent to the batteries inflicted on him by Reece and Benjamin.

I further note that La. R.S. 14:21 provides:

A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.

15

Wayne was never a legal "aggressor" in this case toward Reece or Benjamin, and even if his original act of removing the crawfish boat from the partnership property can be said to amount to an act of aggression against Reece, it is clear Wayne retreated from the conflict. I note too, that the ownership of the crawfish boat was still in question at the time Wayne removed the boat from partnership property, a fact acknowledged by the majority. Wayne fled to his home and summoned the police *en route* in fear of Reece and Benjamin. When Benjamin unlawfully blocked the roadway and caused a collision with Wayne's vehicle he did not get into an altercation but continued to make his way to the safety of his own home. Reece and Benjamin, however, were clearly aggressors at this stage as evidenced by their actions in pursuing Wayne, blocking the roadway with a vehicle causing a collision, and trespassing upon Wayne's property.

Additionally, Louisiana Revised Statutes 14:20(C) (emphasis added) provides:

> (C) A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this Section, and **may stand his or her ground and meet force with force.**

> (D) **No finder of fact shall be permitted to consider the possibility of retreat** as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry.

In a recent Louisiana Supreme Court decision, the court addressed the concept of "retreat" and its interplay with Louisiana's "stand your ground" law. In *State v. Wilkins*, 13-2539, p. 1 (La. 1/15/14), 131 So.3d 839, 840 (emphasis added) the court found:

16

[T]he effect of the 2006 La. Acts 141, amending La.R.S. 14:20 and adding subsections C and D to the statute, was two-fold: a person may choose to defend himself or herself with deadly force under the circumstances defined in R.S. 14:20(A), without considering whether retreat or escape is possible, i.e., *a person "may stand his or her ground and meet force with force"* (C); *and he or she may do so without fear* that, if it came to it, a jury may nevertheless second guess the decision not to flee from the encounter in assessing whether the use of deadly force was justified (D).

Thus, under Louisiana's "stand your ground" law, a person may choose to stand his ground without weighing the possibility of retreating or escaping before responding with deadly force. Fortunately, after being attacked on the public road, pursued to his home, and confronted on his property, Wayne did not resort to deadly force against his own brother. But, Wayne had the legal right to "stand his ground" on his property where he had a legal right to be and was not thereon engaging in unlawful conduct. He did not have to wait for the police, though that might have been a good plan of action, nor was he required to retreat into his house. He had retreated from Reece and Benjamin all the way home to no avail. The law did not require Wayne to retreat farther at that point. He had a right to stand his ground. It cannot be said under these facts and law that Wayne failed to prove lack of consent to the battery of his person by Reece on his own property nor can it be said that Reece proved consent as an affirmative defense to his battery. For the reasons stated, I respectfully dissent.

17

NUMBER 14-364

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

WAYNE GUILLOT, ET UX.

VERSUS

REECE GUILLOT, ET UX.

AMY, J., concurring.

I join in the majority opinion's affirmation of the underlying judgment, finding no manifest error in the jury's factual findings or legal error in the jury charges and/or verdict form.