STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1239

RICHARD LE, ET AL.

VERSUS

NITETOWN, INC.

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20072833
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Sylvia R. Cooks, John D. Saunders, Billy H. Ezell, and Elizabeth A. Pickett, Judges.

EZELL, J., concurs in part and dissents in part for the reasons assigned by Judge Pickett.

PICKETT, J., concurs in part and dissents in part.

AMENDED IN PART; REVERSED AND RENDERED.

Thomas Reginald Hightower, Jr.
Patrick Wade Kee
Michael S. Harper
P. O. Drawer 51288
Lafayette, LA 70505
Telephone: (337) 233-0555
COUNSEL FOR:
    Defendant/Appellee - Nitetown, Inc.

Derriel Carlton McCorvey
P. O. Box 2473
Lafayette, LA 70502
Telephone: (337) 291-2431
COUNSEL FOR:
    Plaintiffs/Appellants - Richard Le and Edward Prince

**THIBODEAUX, Chief Judge.**

The plaintiffs, Richard Le and Edward Prince (collectively referred to as the "plaintiffs"), were injured by bouncers employed by the defendant, Nitetown, Inc. (Nitetown). The jury found that Nitetown's conduct was intentional in part and negligent in part and awarded damages to both plaintiffs. The jury further found that Mr. Le was twenty percent negligent in causing his injuries. In its judgment, the trial court reduced the damage awards to the plaintiffs for the comparative negligence of Mr. Le. Both plaintiffs appeal the reduction in their damages. Finding that the trial court erred as a matter of law in reducing the plaintiffs' damages where the defendant is found liable for intentional tort, we reverse the judgment of the trial court. We further reverse the trial court's assessment of part of the court costs and fees to Mr. Le. We amend the jury awards to both plaintiffs.

I.

**ISSUES**

We must decide:

(1) whether the trial court erred in reducing the plaintiffs' recovery by the percentage of fault attributed to one plaintiff, where the defendant is found to have committed an intentional tort;

(2) whether the trial court abused its discretion in assessing court costs to the plaintiffs in proportion to the comparative fault percentages; and,

(3) whether the amount of the plaintiffs' general damages are subject to review and, if so, whether they are abusively low.

## FACTS AND PROCEDURAL HISTORY

On October 1, 2006, Mr. Le and Mr. Prince incurred injuries at a lounge called Nitetown in Lafayette, Louisiana. A jury found that bouncers employed by Nitetown had used excessive force upon the plaintiffs, that the bouncers' conduct was intentional, and that the plaintiffs were entitled to general and special damages for their injuries. The jury further found that a percentage of Nitetown's fault was in negligence for the improper training of its employees, and that Mr. Le was partially negligent in causing his injuries.[1] The jury found no fault of any kind or degree on the part of Mr. Prince. After stating at trial that there would be no reduction of Mr. Le's recovery for his comparative negligence, the trial court subsequently issued a judgment reducing Mr. Le's damage award by twelve and one-half percent.[2] The trial court also entered judgment reducing Mr. Prince's recovery by twenty percent, due to the negligence of Mr. Le.[3]

The trial court further assessed twelve and one-half percent of the court costs and trial fees to Mr. Le in the Le judgment, and twenty percent of the court costs

---

[1] The plaintiffs requested separate jury verdict forms, and the jury found differing degrees of intent and negligence in each case. The trial court, therefore, rendered two judgments incorporating the respective jury verdicts as follows:

Prince Verdict Form: Nitetown's conduct 40% intentional and 40% negligent; Le's negligence 20%.

Le Verdict Form: Nitetown's conduct 30% intentional and 50% negligent; Le's negligence 20%.

[2] The trial court computed Mr. Le's 12.5% reduction as follows: Nitetown's liability at 80% and their negligence at 50% equals 5/8 of total award (or .625) times 20% negligence of Mr. Le = 12.5% reduction; and $30,270.61 reduced by 12.5% equals $26,486.78 (or $30,270.61 x 87.5% = $26,486.78).

[3] The trial court computed Mr. Prince's reduction as follows: $1,885.78 reduced by 20% for negligence of Mr. Le equals $1,508.62 (or $1,885.78 x 80% = $1,508.62).

and fees to Mr. Le in the Prince judgment, even though there was one trial.[4] The plaintiffs appeal the reduction of their damage awards and the imposition of court costs and fees under the trial court's application of comparative negligence. They also submit that the jury's awards for general damages were abusively low.

III.

## STANDARD OF REVIEW

A trial court's findings of fact are reviewed under the manifest error or clearly wrong standard of review. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993). Reversible errors of law are reviewed de novo. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

IV.

## LAW AND DISCUSSION

Mr. Le and Mr. Prince contend that the trial court erred in reducing their damages by the percentage of negligence that the jury allocated to Mr. Le. We agree. Pursuant to La.Civ.Code art. 2323, the comparative fault of all persons contributing to an injury must be determined, but where part of the damage is the result of the fault of an intentional tortfeasor, the recovery of the injured person *shall not be reduced* because of his own negligence. Specifically, Article 2323 states:

> A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or

---

[4]Both judgments contained an assessment to the plaintiffs for 100% of the costs of a trial and judgment in 2009, which appears from the record to have been continued by the plaintiffs after a jury was selected. This portion of the judgment is not being appealed.

reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

C. *Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.*

La.Civ.Code art. 2323 (emphasis added).

Here, the jury specifically found that the employees of Nitetown, the bouncers, used excessive force against Mr. Le and Mr. Prince, and that the bouncers committed the intentional tort of battery upon the plaintiffs. The jury further found that the conduct of Mr. Le was not intentional, but that Mr. Le was twenty percent negligent in causing his injuries. Under the clear meaning of La.Civ.Code art. 2323(C), there is no reduction in Mr. Le's award where he was the victim of an intentional tort, and it is of no moment that the intentional tortfeasor was also found negligent in some degree. Comparing the negligent fault of an injured party with the intentional actions of the party inflicting the injuries is no longer appropriate. This was not the intent of the legislature when it rewrote La.Civ.Code art. 2323 in 1996, specifically adding subsection (C) prohibiting a reduction of the plaintiff's damages in intentional tort scenarios.

In November of 1994, shortly before the legislature's 1996 revision to Article 2323, the Louisiana Supreme Court articulated its agreement on the differing nature of certain kinds of conduct and the difficulty of comparison:

4

> [A]s Dean Prosser has explained it, intentional wrongdoing "differs from negligence not only in degree but in kind, and in the social condemnation attached to it." Prosser and Keeton on the Law of Torts § 65, at p. 462 (5th Ed.1984). . . . Because we believe that intentional torts are of a fundamentally different nature than negligent torts, we find that a true comparison of fault based on an intentional act and fault based on negligence is, in many circumstances, not possible.

*Veazey v. Elmwood Plantation Associates, Ltd.*, 93-2818 (La. 11/30/94), 650 So.2d 712, 719-20.

The court in *Veazey* went on to explain that, given the then-existing statutory scheme, comparative fault law as it existed at the time in Louisiana was broad enough "in an appropriate factual setting to encompass the comparison of negligent and intentional torts," but it questioned "whether such a comparison *should* be made." *Id*. at 718 (emphasis added). Ultimately, the court left it to the discretion of the individual courts to determine "in what contexts the doctrine of comparative negligence should be applied," on a case-by-case basis. *Id*. at 720.

Thereafter, in 1996, the statutory scheme changed with the rewriting of La.Civ.Code art. 2323 and its heading,[5] specifically adding section (C) *prohibiting* the reduction of a negligent plaintiff's damages where part of the fault was that of an intentional tortfeasor. Section (A) calls for a determination of the fault of all participants in an incident, whether a party or non-party, whether insolvent or immune, such as an employer, a bankrupt, an unknown, or a previously settled and released defendant. Section (B) makes it clear that section (A) applies to all theories of liability, such as negligence, product liability, premise liability, malpractice, and

---

[5]Prior to its revision in 1996, La.Civ.Code art. 2323 was entitled "Computation of damages" and provided: "When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."

so forth; and, it can be extrapolated from (A) and (B) that the fault of two or more intentional actors can be compared in allocating liability between them for payment of a plaintiff's damages. *See Landry v. Bellanger*, 02-1443 (La. 5/20/03), 851 So.2d 943.

Section (C), however, provides a very specific and clear mandate in the case of intentional torts, that the plaintiff's "claim for recovery of damages shall not be reduced," even if his negligence is part of the cause of his damages. La.Civ.Code art. 2323(C). In other words, the negligence of the plaintiff cannot be used to reduce his recovery if part of his damages are caused by an intentional tortfeasor.

As the *Landry* court stated,

> It is appropriate to consider each party's respective fault when a matter involves intentional tortfeasors. In prohibiting the reduction of a negligent plaintiff's damages, Article 2323(C) reflects a legislative determination that on the continuum of moral culpability, the act of an intentional actor should not benefit from a reduction in the damages inflicted on a less culpable negligent actor.

*Landry v. Bellanger*, 851 So.2d at 954. Such an application "furthers public policy by preventing an intentional tortfeasor from using the comparative fault regime to reduce his own obligation to compensate a less culpable victim." *Id*.

Even prior to the effective date of Article 2323's revision and the mandate of section (C), the jurisprudence largely found contributory negligence, or comparative fault, unavailable as a defense to an intentional tort and inapplicable to

6

reduce the damages to which a victim of an intentional tort is entitled.[6] Accordingly, the twelve and one half percent reduction in Mr. Le's award is reversed.

With regard to Mr. Prince, who was assessed with no degree of negligence whatsoever, it would be absurd to reduce his award for the twenty percent negligence of his co-plaintiff, when the co-plaintiff is not being penalized for his own negligence. This event was not an accident for which Mr. Le was found twenty percent liable. The jury's verdict form on Mr. Le found that Mr. Le "breached the standard of ordinary care contributing to *his* injuries" in the amount of twenty percent. The jury's verdict form on Edward Prince found that Mr. Prince had *not* "breached the standard of ordinary care contributing to *his* injuries" in any percent whatsoever. The defendant committed a battery on each one of the individual plaintiffs. It is clear that the legislature intended to carve out a protection for plaintiffs injured by intentional torts, and there is no indication in the article that a completely innocent plaintiff, i.e., one who is not negligent, should not be afforded the same protection as his partially negligent co-plaintiff who was injured by the same tortfeasor.

As we indicated in *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 99-12, p. 41 (La.App. 3 Cir. 7/21/99), 738 So.2d 172, 195-96, *reversed on other grounds*, 01-2217 (La. 4/3/02), 816 So.2d 270, it would be absurd to penalize a non-

---

[6]"The case law of most jurisdictions does not allow either contributory negligence or comparative fault as a defense to an intentional tort. Comparative negligence, which has taken the place of contributory negligence in Louisiana, is likewise not applicable to reduce the damages to which the victim of an intentional tort is entitled. Woods, H., Comparative Fault, §§ 7.1 and 7.2. (The Lawyers Co-Operative Publishing Co., 1978). *Hebert v. First Guar. Bank*, 493 So.2d 150, 155 (La.App. 1 Cir. 1986) [conversion case]." *Miles v. Louisiana Landscape Specialty, Inc.*, 97-118 (La.App. 5 Cir. 6/30/97), 697 So.2d 348, 350-51 (sexual assault and battery). *See also Broussard v. Lovelace*, 610 So.2d 159 (La.App. 3 Cir. 1992), *writ denied*, 615 So.2d 343 (La.1993) (conversion case); *Bradford v. Pias*, 525 So.2d 134 (La.App. 3 Cir. 1988) (battery case). After the 1996 revision, *see Henderson v. Sellers*, 03-747 (La.App. 3 Cir. 12/17/03), 861 So.2d 923 (battery between minors); *Glod v. Baker*, 08-355, p. 15 (La.App. 3 Cir. 11/19/08), 998 So.2d 308, *writ denied*, 08-2937 (La. 2/20/09), 1 So.3d 497 (wrongful conversion).

negligent plaintiff just because he was not specifically named in a statute that was enacted to protect victims, such as himself, from intentional conduct:

> [I]t is clear under 2323(C) that the partly negligent plaintiff is not to be penalized for the intentional harm that has befallen him--i.e., "his claim for recovery of damages shall not be reduced." What of the completely innocent, non-negligent plaintiff such as we have in this case? Surely he should be entitled to at least as much as the negligent plaintiff, such that his damages "shall not be reduced" by the fault of the intentional tortfeasor.

While factually different, *Pinsonneault* discusses the importance of not isolating one statute, or section of a statute, and applying it so literally that, standing alone, it leads to an illogical and absurd result not intended by the legislature in enacting the law:

> As a general rule, "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' [in which case] the intention of the drafters, rather than strict language controls." "When the literal construction of a statute produces absurd or unreasonable results, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result."

*Pinsonneault*, 738 So.2d at 198 (quoting State v. Ste. Marie, 98-1167, pp. 2-3 (La. 12/18/98), 723 So.2d 407, 409).

The reasonable result is to give the blameless or negligence-free plaintiff the same protections from the intentional tortfeasor as those afforded to the partially negligent plaintiff. The twenty percent reduction in Mr. Prince's recovery is, therefore, reversed.

### Allocation of Costs

The plaintiffs also contend that the trial court erred in assessing court costs and fees in proportion to the negligence that was attributed to Mr. Le. As a

general rule, and as a default rule under La.Code Civ.P. art. 1920,[7] the party cast in judgment is cast for all costs of trial. *Berzins v. Betts*, 457 So.2d 282 (La.App. 3 Cir. 1984). While "the trial court has broad discretion in the assessment of costs" under Article 1920,"this discretion is not unbounded. In the absence of some equitable or other good reason, costs generally follow the final judgment in favor of the prevailing party." *LeBlanc v. Opt., Inc.*, 421 So.2d 984, 989 (La.App. 3 Cir. 1982), *writs denied*, 427 So.2d 438 and 429 So.2d 132 (La.1983) (citations omitted). Here, the trial court assessed part of the costs to Mr. Le to coincide with the percentage of negligence attributed to Mr. Le. Where we have found it error to use Mr. Le's negligence to reduce his recovery from Nitetown, thereby finding Nitetown liable for 100 percent of the damages, we likewise find that Nitetown is cast with all costs of the trial and the appeal. We, therefore, reverse the trial court's assessment of a percentage of the costs and fees to Mr. Le.

### *General Damages*

Mr. Le and Mr. Prince contend that the jury's awards for general damages were abusively low for each. They seek increases in the quantum of those damages on appeal. Nitetown filed a motion for partial dismissal in this court, arguing that the plaintiffs limited their appeal to the comparative fault issue under La.Civ.Code art. 2323(C) and specifically designated only the portion of the record that contained the trial court's analysis of the jury verdict forms on the percentages of fault assigned. Nitetown cites La.Code Civ.P. art. 2129, which states in pertinent part: "[w]here the appellant designates only portions of the record as the record on

---

[7]Article 1920, entitled, "Costs; parties liable; procedure for taxing," states: "Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."

9

appeal, he must serve with his designation a concise statement of the points on which he intends to rely, and the appeal shall be limited to those points."

The record reveals however, that the plaintiffs have filed two motions with this court "To Supplement The Designated Record." Following the first motion, which Nitetown opposed, a panel of this court issued an Order granting the plaintiffs' motion pursuant to La.Code Civ.P. art. 2128. Article 2128 states in pertinent part that, after the original designation of the record by the appellant, the appellee may also designate other portions that he considers necessary, and that thereafter, "a party or the trial court may cause to be filed . . . any omitted portion of the record as a supplemental record." Subsequently, the plaintiffs second motion to supplement the designated record was properly granted by Order of our Clerk of Court. The plaintiffs' supplements contain the medical records of the plaintiffs, psychological evaluation records, and medical bill summaries, all of which were entered as exhibits during trial. The plaintiffs' appeal thoroughly briefs their assignment of error regarding the jury's awards of general damages. Accordingly, Nitetown's motion for dismissal of this issue is denied. We will consider whether the general damage awards of the jury were abusively low.

Richard Le was a twenty-two-year-old junior at the University of Louisiana at Lafayette when the Nitetown incident occurred. The report of the clinical psychologist, Lyle LeCorgne Ph.D., states that Mr. Le was trying to move past a woman with a cigarette without getting burned and was excusing himself as he passed by her when a Nitetown bouncer blocked him with an arm to his chest and stared at him; that Mr. Le questioned another patron regarding what was wrong with the bouncer; that the other patron said the bouncer was messed up; that the bouncer then pushed Mr. Le outside, threw him to the ground, pulled his shirt over his head,

and while one person held him down, three other bouncers hit and possibly kicked him for four or five minutes. The report further related that Mr. Le was choked by a bald bouncer and that the Nitetown manager watched the beating, which stopped only when people approached in the alley. The bouncers told police officers that Mr. Le's wounds were the result of his fighting inside the club, and he was not allowed to give a statement. An ambulance took Mr. Le to Our Lady of Lourdes emergency room. Mr. Le could not walk for a week and a half, and had swelling and bruises for three weeks.

Mr. Le's physical injuries included lumbar, left shoulder, and left knee strains, multiple scalp and facial hematomas with contusion, multiple lacerations, and right chest wall hematoma. Pursuant to Mr. Le's psychological report, he was not causing problems at Nitetown and had never been in a fight. Mr. Le felt that he was treated like an animal. He saw the main bouncer on campus, thought about the incident frequently, dreamed about it regularly, slept only three or four hours a night, and sometimes waited at the door of his home for them to "come finish [him] off." He experienced a drop in his grades, especially in math. Pursuant to the psychological evaluation of Dr. LeCorgne, Mr. Le suffers from depressive disorder and anxiety disorder with prominent features of post-traumatic stress disorder. Mr. Le's test results indicated severe symptoms of post-traumatic stress, due to intrusive recollections of the traumatic event, and significant post-traumatic avoidance symptoms, indicating withdrawal, apathy, and emotional numbing, as well as a tendency to avoid people, places, or situations that remind him of the index trauma. Dr. LeCorgne reported that Mr. Le exhibited clinically meaningful levels of trauma-specific dissociation which could signal the presence of a more complex post-traumatic stress disorder.

11

Mr. Le's emergency room examination revealed that one of the multiple head lacerations indicated that the corner of something had hit him, possibly a ring, and another looked like a crush-type injury with some blunt edge also. He had multiple lacerations around his head with approximately six hematomas to the forehead. His brain CT was normal, and the CT of facial bones identified no facial fracture; MRI's of his left knee and shoulder were negative. Mr. Lee had physical therapy and treated with an orthopaedic surgeon for his shoulder, back, and knee, for about three months.

The jury awarded Richard Le $12,838.26 for medical expenses, $13,000.00 for pain and suffering, and $4,432.35 for mental anguish. He submits that the award for mental anguish was too low for the psychological injuries he sustained. Counsel for Mr. Le cites various cases awarding mental anguish damages starting at $25,000.00, and going up to $350,000.00 for psychiatric and physical pain and suffering. While we find the range for comparable mental anguish to be narrower,[8] we find that Mr. Le's general damage award was abusively low, and we will increase his overall general damage award to $50,000.00, inclusive of physical pain and suffering *and* mental anguish.

Edward Prince was twenty-five years old at the time of injury. He was treated at Lafayette's University Medical Center emergency room for a laceration to

___

[8]*See Henderson v. Sellers*, 861 So.2d 923 ($25,000.00 in general damages to high school quarterback for broken jaw sustained in fight, two months of significant pain, embarrassment, and inability to play sports his senior year; special damages were $4,670.00); *Meche v. Duhon*, 05-423 ( La.App. 3 Cir. 11/2/05), 917 So.2d 507 ($30,000.00 in general damages to bar patron for chipped teeth, eye contusion, concussion, amnesia, concentration and anger issues resulting from altercation; special damages were $3,611.00); *Thomas v. Busby*, 95-1147 (La.App. 3 Cir. 3/6/96), 670 So.2d 603 (defamation plaintiff; $25,000.00 for mental anguish); *Taylor v. State,* 617 So.2d 1198 (La.App. 3 Cir.), *writ denied*, 620 So.2d 875 (La.1993) (malicious prosecution plaintiff; $40,000.00 for past, present and future anxiety, distress and depression); *Chatelain v. Rabalais*, 40-28 (La.App. 3 Cir. 7/7/04), 877 So.2d 324 ($45,000.00 for emotional distress of father regarding shooting incident); *Precht v. Case Corp*., 99-1296 (La.App. 3 Cir. 2/16/00), 756 So.2d 488, *writ denied*, 761 So.2d 546 (La. 5/5/00) ($50,000.00 in overall general damages, which included post-traumatic stress disorder that could be ongoing; tractor operator suffered second-degree burns over ten percent of his body and painful healing process; special damages were $9,427.98).

the back of his scalp and surrounding hematoma. He reported having been hit in the head with a fist during an altercation. Mr. Prince's medical records do not reveal how he became involved in the incident. His laceration was sutured, and the suture was to be removed in eight days. The jury awarded Mr. Prince $385.75 for medical expenses and $1,500.00 for pain and suffering. Mr. Prince suggests that general damages for scalp lacerations are appropriate at $5,000.00. He cites *Risk v. State*, 549 So.2d 1272 (La.App. 3 Cir. 1989) (laceration on head from single-vehicle accident) and *Doucet v. B & R Petroleum Services, Inc.*, 546 So.2d 626 (La.App. 3 Cir. 1989) (twelve stitches to forehead when truck driver was accidently struck by pipe). In this intentional tort case, we will increase Mr. Prince's general damage award to $5,000.00.

## V.

## CONCLUSION

Based upon the foregoing, pursuant to La.Civ.Code art. 2323(C), we reverse the trial court's reduction of the plaintiffs' damages. We further reverse the trial court's partial assessment of costs and fees to the plaintiffs, casting all costs and trial fees to the defendant, Nitetown, Inc. We amend the jury's awards for general damages by increasing the award to Mr. Le to $50,000.00 and Mr. Prince's to $5,000.00. Costs of this appeal are assessed to Nitetown, Inc.

**AMENDED IN PART; REVERSED AND RENDERED**.

RICHARD LE, ET AL.

VERSUS

NITETOWN, INC.

**PICKETT, J., concurring in part and dissenting in part.**

I concur in the judgment of the majority opinion to the extent that the reduction of Mr. Le's damages by twelve and one half percent is reversed. I find the plain language of La.Civ.Code art. 2323(C) demands this result, but only because Mr. Le suffered damages "as a result partly the result of **his own** negligence and partly the result of the fault of an intentional tortfeasor."

In all other respects, I dissent from the majority's judgment. Mr. Prince's damages were properly decreased by twenty percent because of the negligence of Mr. Le. Article 2323(C) does not apply to allow Mr. Prince full recovery because his damages are not a result of **his own** negligence. The majority believes it would be absurd to allow Mr. Le, a negligent party, to recover all of his damages, but reduce the fault of Mr. Prince, an innocent party, by twenty percent because of the negligence of Mr. Le. But Mr. Prince is not being punished because of Article 2323(C). Mr. Prince could have recovered one hundred percent of his damages simply by naming Mr. Le as a defendant in this suit. The majority's "reasonable result" is contrary to the law, and I respectfully dissent.

Because I would reverse the judgment of the trial court insofar as it lowered Mr. Le's recovery from Nitetown, I would likewise reverse the assessment of court

1

costs to him. I would not disturb the trial court's assessment of twenty percent of the costs in Mr. Prince's case to Mr. Le, as I find no abuse of the trial court's broad discretion in assessing costs.

Finally, I would affirm the trial court's general damage awards because the designated record provides an incomplete basis for a thorough review. When the plaintiffs originally designated the record, they only included the portion of the trial court record and transcript containing proceedings which occurred after the jury rendered its verdict. The plaintiffs then supplemented the record with some medical records of Messrs. Le and Prince with this court's permission, over the objection of Nitetown. After this case was heard by a three-judge panel, but before it was submitted to a five-judge panel, the plaintiffs supplemented the record with the full medical records of both plaintiffs. The plaintiffs argue that this court should increase the general damages awarded.

In *Reck v. Stevens*, 373 So.2d 498 (La.1979), the supreme court rejected the approach of reviewing general damage awards by simply reviewing medical evidence and determining that the trial court abused its discretion. The law clearly requires that we must determine "whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the 'much discretion' of the trier of fact." *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993). Because the designated record in this case lacks any indication of the "particular circumstances of the particular injured person," I cannot review whether the trial court abused its great discretion. On the record before us, I would find that the assignment of error lacks merit.

The majority reviews the facts of this case not by reviewing the testimony, under cross-examination, of the participants in the altercation, but by relying on the

2

report of Mr. Le's psychologist and the medical records of Messrs. Le and Prince. Outside of the context of the trial transcript, I find that the majority errs in considering this evidence to evaluate whether the trial court abused its much discretion in its award of general damages.