COOKS, J.
Dissents.
|, Wayne Guillot (Wayne) and Reece Guillot (Reece) are brothers who got into a physical altercation on Wayne’s property as a result of Wayne removing a crawfish boat from the premises owned by a family partnership. Reece was a member of the partnership and was using the boat in the on-going crawfish farming operations of the partnership. When a neighbor alerted Reece to Wayne’s activity, Reece pursued Wayne in an apparent effort to stop him. Reece’s son, Benjamin Guillot (Benjamin), in an effort to assist his father blocked the public roadway with his vehicle. Attempting to dodge Benjamin’s vehicle, Wayne collided with it but managed to continue travelling to his home. En route to his home, with Reece and Benjamin in hot pursuit, Wayne telephoned his wife and instructed her to telephone the police because he knew “there was going to be trouble.” Wayne arrived at his home followed closely by Reece and Benjamin. Reece arrived immediately behind Wayne and parked on Wayne’s driveway, at his home, behind Wayne’s truck and trailer. Wayne and Reece got into a fist fight in the area between the rear of Wayne’s boat trailer and the front of Reece’s truck. The eyewitnesses’ testimony varies as to the exact location of the two men relative to their vehicles but all agree it was in the area at the rear of Wayne’s truck/trailer on Wayne’s property. The testimony also varies as to who threw the first punch. It is 12without dispute that Reece, while uninvited on Wayne’s property, struck Wayne in the eye, knocked him to the ground, and kept swinging until he could no longer physically continue hitting Wayne. Wayne sued Reece for his personal injuries due to alleged permanent damage to his eye; Benjamin for property damage to his vehicle; and Farm Bureau as the insurer of both. Farm Bureau was dismissed on summary judgment. That ruling was upheld by a panel of this court in Guillot v. Guillot, 12-109 (La.App. 3 Cir. 6/6/12), 92 So.3d 1212 (emphasis added) which held:
Having reviewed the record and the jurisprudence, we find that the policy language excluding the expected or unexpected results of an intentional act from coverage is a valid exclusion and has been upheld in numerous instances. See Richard v. Brasseaux, 50 So.3d 282 [ (La.App.3 Cir.2010) ]; Perkins v. Shaheen, 867 So.2d 135 [ (La.App.3 Cir.2004)]; Fontenot v. Duplechine, 891 So.2d 41 [(La.App.3 Cir.2004)]. The Farm Bureau homeowner’s and farm liability policies unambiguously excluded coverage for Wayne’s injuries resulting from the intentional actions of Reece and Benjamin. Likewise, the umbrella *852 policies unambiguously excluded coverage for Wayne’s injuries resulting from the intentional actions of Reece and Benjamin. Therefore, we find no coverage under the automobile, homeowners’, farm, and umbrella policies written by Farm Bureau in effect at the time of the incident at issue herein. Accordingly, we find there is no genuine issue of material fact, and the trial court’s grant of summary judgment is affirmed.
The jury found Reece was not liable for any injury to Wayne because Wayne’s recovery was barred by his “consent.” It found Benjamin liable for all damages to Wayne’s vehicle caused by Benjamin’s intentional acts. Benjamin did not appeal the judgment against him. Wayne appeals the judgment dismissing his suit against Reece.
The majority affirms the jury verdict based upon its understanding of the Louisiana Supreme Court’s language in Landry v. Bellanger, 02-1443 (La.5/20/03), 851 So.2d 943, that consent is a complete bar to recovery. The majority also bases its decision on the holding in Richard v. Mangion, 535 So.2d 414 (La.App. 3 Cir.1988) in which a panel of this court held: “When two parties expressly or impliedly agree to fight, the consent of one is not vitiated merely because the other strikes the first blow.” In Landry, the supreme court held:
Louisiana’s intentional tort doctrine has traditionally afforded an intentional tortfeasor a full defense if he can establish consent, privilege or self-defense, or enough provocation to trigger the aggressor doctrine ...
[[Image here]]
Hence, the existence of consent means the defendant did not commit a tort and the existence of a privilege means the defendant’s tort was justified, (citation omitted) Conversely, Louisiana’s aggressor and mitigation doctrines are victim-fault defenses. Neither theory implies that no tort has occurred or that the defendant’s conduct was justified, but instead, seek to penalize the victim. As Robertson then points out “On this analysis the percentage-fault approach should replace both the aggressor doctrine and the mitigation doctrine, while leaving the full defenses of consent and privilege intact. In this way the comparative fault principles will be confined to the job they were designed to do — taking victim fault into account.” (citation omitted)
[[Image here]]
In a suit for damages resulting from an intentional tort, the claimant must carry the burden of proving all prima facie elements of the tort, including lack of consent to the invasive conduct. In turn, the defendant may seek to prove that he is without fault because his actions were privileged or justified, such as self-defense. Self-defense, unlike the aggressor doctrine, is a true defense in that it operates as a privilege to committing the intentional tort.
Landry, 851 So.2d at 952, 954.
The majority examines all of the conflicting testimony at trial. It finds the record supports a reasonable factual basis upon which the jury, weighing the credibility of all of the conflicting witnesses before it, could conclude that Wayne failed to carry his burden to prove lack of consent. Moreover, the majority finds there are some facts which can be gleaned from the record which are not the subject of conflicting testimony. Wayne admits he had no immediate use for the |-4boat. He also admits he knew “the second” he left Reece’s property with the boat “there was going to be trouble.” There is no dispute that the event occurred during the busiest *853 week of crawfish season for Reece as an active crawfish farmer while Wayne was not engaged in crawfishing at the time. Wayne admits he called his wife and told her to call the police.
The majority reasons that when Wayne arrived at his home he could have chosen to avoid an altercation with Reece. It suggests Wayne could have either remained in his vehicle until the police arrived, or gone directly into his house, but instead, he chose to walk to the rear of his truck and boat trailer toward Reece. There is no conflict in the evidence as to the fact that Wayne had to exit his truck and take a number of steps moving in the direction toward Reece to reach the rear of his vehicle even if the number of steps is debatable says the majority. The majority also finds the record establishes Reece was wrong to follow Wayne to his home and confront him in his own driveway. Recognizing these facts, the majority nevertheless finds the jury had sufficient evidence to reasonably conclude that Wayne consented to the altercation in which he was injured. The majority also finds that although Reece may have used excessive force in continuing to hit Wayne, the weight of the evidence supports a finding that it was the first blow struck that injured Wayne’s eye.
Although the majority notes that this court may disagree with the jury, and may have reached differing factual conclusions, it finds we must defer to the jury’s discretion where the record establishes a reasonable basis for the jury’s findings of fact, citing Ardoin: “When there are two permissible views of the evidence, the factfin-der’s choice between them cannot be manifestly erroneous.”
|fiThe majority finds Wayne’s “objection” to the jury charges was confusing, but nevertheless addresses Wayne’s assertions regarding the applicability of comparative fault to the law on consent. The majority concludes that Landry clearly holds comparative fault does not apply in cases involving the defense of consent or the existence of the privilege of self-defense. It also concludes there is a sufficient basis in the record upon which the jury could reasonably conclude Wayne consented to Reece’s intentional tort noting that Wayne consented to the altercation as soon as he exited his vehicle and took steps toward Reece. It further finds Wayne arguably consented when (1) he took the boat, which the majority finds the ownership of to be unresolved at the time Wayne took possession of it from the family partnership property, and (2) told his wife to call the police because there was going to be trouble. Thus, reasons the majority, Wayne impliedly expressed consent by these actions and again with his movements toward Reece at his home knowing trouble was on the horizon. The majority concludes that the jury instruction which read: “if you find the defendant committed a battery upon Wayne, but you also find that Wayne consented to the fight that produced the battery, then you must return a verdict for defendant,” is in line with its reading of the holding expressed by the supreme court in Landry and we are bound to follow that holding. The majority admits it is troubled by the fact that both brothers seemed to have taken the law into their own hands, but maintain that the jury and this court must follow the law as interpreted by the Louisiana State Supreme Court and as understood by the majority. Thus, the majority opines, that we cannot disturb the jury’s finding of facts which lead to the conclusion that Wayne consented to the altercation and this consent is a complete bar to recovery.
|fiI respectfully do not agree with the majority’s reasoning nor with its ultimate conclusions.
*854 In Guillot v. Guillot, 12-109, p. 9 (La.App. 3 Cir. 6/6/12), 92 So.3d 1212, 1217 (emphasis added) this court held “The Farm Bureau homeowner’s and farm liability policies unambiguously excluded coverage for Wayne’s injuries resulting from the intentional actions of Reece and Benjamin.” Thus, this court previously held that the same actions by Reece and Benjamin at issue in this case, which were addressed in the prior case, constitute intentional torts. As such, Reece and Benjamin cannot escape liability for any injuries to Wayne which resulted from Reece’s intentional physical attack on Wayne unless Wayne consented to the battery inflicted upon him by Reece.
The evidence clearly shows that Reece and Benjamin acted in concert to intentionally attack Wayne after he retreated from them and sought sanctuary on his own property. As the majority points out, Wayne tried to summon the police in fear that trouble was about to erupt. Before the police could arrive, Reece and Benjamin followed Wayne onto his own property where Reece set upon him and beat him until he was too tired to continue the battery. Wayne alleges he was seriously injured and that his injuries have caused him significant damages. With all due respect, I believe the majority’s understanding that Landry constrains this court to excuse Reece and Benjamin’s intentional tort because Wayne “consented” to such injury is not consistent with Landry, Civil Code article 2323(C), the jurisprudence and other laws discussed below.
Louisiana Civil Code article 2323(C) (emphasis added) provides:
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own |7negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
On the issue of consent, Landry merely recognized “lack of consent” as an element of a plaintiffs burden to prove a prima facie case of intentional tort:
In a suit for damages resulting from an intentional tort, the claimant must carry the burden of proving all prima facie elements of the tort, including lack of consent to the invasive conduct. In turn, the defendant may seek to prove that he is without fault because his actions were privileged or justified, such as self-defense. Self-defense, unlike the aggressor doctrine, is a true defense in that it operates as a privilege to committing the intentional tort. In such a case, a plaintiffs conduct must have gone beyond mere provocation under the aggressor doctrine. Under Louisiana jurisprudence, in order to succeed on a claim of self-defense (not involving deadly force), there must be an actual or reasonably apparent threat to the claimant’s safety and the force employed cannot be excessive in degree or kind, (citation omitted) The privilege of self-defense is based on the prevention of harm to the actor, not on the desire for retaliation or revenge, no matter how understandable that desire, (citation omitted) Furthermore, the prevailing view in almost every one of our sister states is:
Threats and insults may give color to an act of aggression, but in themselves, they do not ordinarily justify an apprehension of immediate harm, and the defendant is not privileged to vindicate his outraged personal feelings at the expense of the physical safety of another ...
Landry, 851 So.2d at 954, 955.
In Landry, the court found Mr. Landry first provoked Mr. Bellanger after Lan *855 dry’s unrelenting verbal provocations turned to physical, aggressive pushing of Bellanger, coupled with continued threats of physical violence. Once outside the bar, Landry again pushed Bellanger, threatening physical violence to which Bellanger responded with one punch. The state supreme court found Bellanger’s response to Landry’s aggression was “legally permissible self-defense” which was justified under those circumstances. “Because Landry followed his verbal ^provocations with physical confrontations, Bellanger was justified in striking a blow to defend himself. Under all these circumstances, we find that Bellanger acted in self-defense and was not at fault in causing Landry’s damages.” Id. at 956. The case was not decided on consent or lack thereof, and sheds little light on what constitutes consent. It does however, highlight the notion that:

[a] defendant is not privileged to vindicate his outraged personal feelings at the expense of the physical safety of another ...

Id. at 955.
Louisiana law does not permit self-help, a legal maxim applicable to both Reece and Wayne in the instant case. Wayne may have acted improperly in his self-help taking of the boat from Reece’s property, but, as the majority acknowledges, ownership of the boat was still in dispute. Reece clearly tried to engage in self-help by following Wayne onto his own private property as a trespasser, presumably to retrieve partnership property for which he had an immediate use. Reece enlisted the help of his son, Benjamin, to physically threaten and menace Wayne on the public roadways by blocking the roadway and causing a collision from which Wayne extricated himself, and proceeded home in continued retreat from his assailants. Nothing in the law permitted Reece and his cohort Benjamin to physically attack Wayne at his home after he retreated to its safety and summoned the police for help. In this scenario there is no element of either express or implied consent on Wayne’s part. He did not agree to get in the ring and duke it out with Reece, in which case he could be said to have expressly consented to his injury. Nor does the evidence establish that Wayne impliedly consented to the batteries perpetrated by Reece and Benjamin. Instead, the evidence shows without contradiction that he fled from Reece and his son to | nthe safety of his own home even after being physically attacked by Benjamin using his vehicle on a public roadway to attack Wayne. In this case, there is no evidence that Wayne was the aggressor such as might excuse Reece’s behavior. To the contrary, Reece and his son aggressively pursued Wayne while he was in full retreat and followed him onto his own property where Reece perpetrated an intentional tort, battery, upon Wayne, apparently motivated by “revenge” or “retaliation” for the removal of the crawfish boat from the partnership property. As the court said in Landry: “The privilege of self-defense is based on the prevention of harm to the actor, not on the desire for retaliation or revenge, no matter how understandable that desire,” Id., i.e., even if your brother takes a crawfish boat you have need of, on Palm Sunday weekend in south Louisiana, you do not enjoy the right to attack him at his own home and commit a battery upon his person. Reece did not act in self-defense. His actions, as previously determined by this court, constituted an intentional tort for which he had no lawful excuse which would preclude his liability under the express provision of La. Civ.Code art. 2323(C).
Reece’s intentional tort precludes any assignment of fault to Wayne for his injuries at the hands of Reece and his son absent Wayne’s express or implied con *856 sent. Furthermore, as to Benjamin’s liability, his actions are governed by the provisions of La. Civ.Code art 2324(A): “He who conspires with another person to commit a intentional or willful act is answerable, in solido, with that person, for the damages caused by such act.” It was inconsistent for the jury to conclude that Benjamin is liable to Wayne for his intentional tortious conduct but to then conclude that his co-conspirator, Reece, is not liable for his intentional battery of Wayne. Wayne no more “consented” (directly or by implication) to Benjamin’s [ inintentionaI tort than to Reece’s. The majority fails to recognize this glaring inconsistency and offers no explanation to reconcile these competing findings.
Louisiana law mandates, and Landry and cases following make clear, that “In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined ...” Id. at 952. Thus, the proper resolution of this case involves a determination of each party’s degree of fault, but, under the provisions of La.Civ. Code art. 2323(C), even if Wayne, due to his own negligence, is partly to blame for the intentional tort inflicted upon him, his degree of fault cannot be used to reduce his damages caused by intentional tortfea-sors such as Reece and Benjamin. In this case, the court must determine the degree of fault shared by Reece and Benjamin for Wayne’s injuries and Wayne must, of course, prove his damages.
In Touchet v. Hampton, 08-833 (La. App. 3 Cir. 12/11/08), 1 So.3d 729, a panel of this court addressed the issue of intentional tort and consent as a defense. Mr. Touchet was an employee of Hampton Mitsubishi, a car dealership owned by Mr. Hampton. Some months after he was terminated, Touchet telephoned Hampton at the dealership and “made fun of’ Id. at 730, the business because sales were down. Hampton hung up the phone but Touchet called back. Hampton would not take the call. Touchet later placed another call, and when he spoke to Hampton he “cursed him, threatened him, and told him he knew where he lived.” Id. Touchet kept calling Hampton and began leaving threatening messages on his voice mail. Hampton had enough and decided to confront Touchet in person at his new place of employment, Jackie Edgar RV Center. On Hampton’s first visit Touchet was not there. Hampton made a second visit and this time he confronted |nTouchet in his office. When Hampton entered Touchet’s office, unannounced, Touchet’s back was turned, and upon hearing Hampton’s voice, Touchet turned toward him in his chair and “yelled ‘F[ — k] you, Hampton,’ ” Id. According to Hampton, this reaction by Touchet startled him and placed him in fear that “Tou-chet was going to hit [him and do] what he said he was going to do.” Id. Hampton asserted that he then “defended himself by hitting Touchet [and] although he did not know how many times he hit Touchet, Hampton surmised that the incident lasted approximately twenty seconds before Tou-chet’s co-worker, David Raggette, intervened and pulled Hampton off Touchet. Hampton immediately left the premises.” Id. The trial court found Hampton acted in self-defense. This court reversed, reasoning that:
Under La.Civ.Code art. 2315, a person is liable for acts which cause damage to another. The intentional tort of battery is “[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact[.]” Caudle v. Betts, 512 So.2d 389, 391 (La.1987). “In a suit for damages resulting from an intentional tort, the claimant must carry the burden of proving all prima facie *857 elements of the tort, including lack of consent to the invasive conduct.” Landry v. Bellanger, 02-1443, p. 15 (La.5/20/03), 851 So.2d 943, 954. Mere words will not justify a battery. Morneau v. Am. Oil Co., 272 So.2d 313 (La.1973).
Touchet, 1 So.3d at 732. (emphasis added)
This court found that nothing Touchet did constituted consent to a battery. Tou-chet, like Wayne in this case, initiated the chain of events, but Touchet was not deemed to have consented to Hampton’s battery in response. Likewise, Wayne cannot be said to have expressly or impliedly consented to Reece’s and Benjamin’s batteries by virtue of initiating the chain of events.
Mr. Hampton sought out Mr. Touchet at his place of employment, entered Mr. Touchet’s office, and hit Mr. Touchet repeatedly until Mr. Raggette pulled Mr. Hampton away. Furthermore, nothing that Mr. Touchet did when Mr. Hampton entered his office can be eon-sidered | ^consent. Turning around in his chair, yelling an expletive at Mr. Hampton, and beginning to stand up are not sufficient provocations to rise to the level of giving consent to a battery.
Id. (emphasis added)
Additionally, nothing Wayne did once on his own property after retreating from Reece and Benjamin’s roadway attack, can be said to constitute consent to Reece’s relentless battery, inflicted upon Wayne until Reece was too tired to continue. In Fricke v. Owens-Corning Fiberglas Corporation, 571 So.2d 130, 132 (La.1990) (emphasis added), the state supreme court noted: “ ‘All intended wrongs have in common the element that they are inflicted without the consent of the victim.’ Doe v. Breedlove, 04-06, p. 11 (La.App. 1 Cir.2/11/05), 906 So.2d 565, 572.” Additionally, as the First Circuit stated in Doe: “The defendant’s intention [when committing a battery] need not be malicious nor need it be an intention to inflict actual damages. It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other’s consent. [.Landry 851 So.2d at 949].” Id.
Addressing the issue of the exclusion of insurance coverage for intentional torts, the state supreme court in Yount v. Maisano, 627 So.2d 148, 152 (La.1993), stated: “we hold that where an insured sets out to commit a battery on another individual and repeatedly strikes him in the face with both fists and kicks him repeatedly in the face, the resulting broken facial bones and other facial injuries are either intended by the insured or the insured must know that such injuries are substantially certain to result.” In Le v. Nitetown, Inc. 10-1239 (La.App. 3 Cir. 7/20/11), 72 So.3d 374, writ denied 11-1826 (La.11/4/11), 75 So.3d 924, this court addressed the application of La. Civ.Code art. 2323(C), to the victim of an intentional tort, when the victim is also found partly negligent for his injuries. In | nLe, the court found the bouncers at the bar committed the intentional tort, battery, upon Le, but also found Le twenty-percent negligent in causing his injuries. We held:
Under the clear meaning of La.Civ.Code art. 2323(C), there is no reduction in Mr. Le’s award where he was the victim of an intentional tort, and it is of no moment that the intentional tortfeasor was also found negligent in some degree. Comparing the negligent fault of an injured party with the intentional actions of the party inflicting the injuries is no longer appropriate. This was not the intent of the legislature when it rewrote La.Civ.Code art. 2323 in 1996, specifically adding subsection (C) prohibiting a reduction of the plaintiffs damages in intentional tort scenarios.
*858 In November of 1994, shortly before the legislature’s 1996 revision to Article 2323, the Louisiana Supreme Court articulated its agreement on the differing nature of certain kinds of conduct and the difficulty of comparison:
[A]s Dean Prosser has explained it, intentional wrongdoing “differs from negligence not only in degree but in kind, and in the social condemnation attached to it.” Prosser and Keeton on the Law of Torts § 65, at p. 462 (5th Ed.1984).... Because we believe that intentional torts are of a fundamentally different nature than negligent torts, we find that a true comparison of fault based on an intentional act and fault based on negligence is, in many circumstances, not possible.
Veazey v. Elmwood Plantation Associates, Ltd., 93-2818 (La.11/30/94), 650 So.2d 712, 719-20.
The court in Veazey went on to explain that, given the then-existing statutory scheme, comparative fault law as it existed at the time in Louisiana was broad enough “in an appropriate factual setting to encompass the comparison of negligent and intentional torts,” but it questioned “whether such a comparison should be made.” Id. at 718 (emphasis added). Ultimately, the court left it to the discretion of the individual courts to determine “in what contexts the doctrine of comparative negligence should be applied,” on a case-by-case basis. 1 Id. at 720.
Thereafter, in 1996, the statutory scheme changed with the rewriting of La.Civ.Code art. 2323 and its heading, specifically adding section (C) prohibiting the reduction of a negligent plaintiffs damages where part of the fault was that of an intentional tortfeasor. Section (A) calls for a determination of the fault of all participants in 114an incident, whether a party or non-party, whether insolvent or immune, such as an employer, a bankrupt, an unknown, or a previously settled and released defendant. Section (B) makes it clear that section (A) applies to all theories of liability, such as negligence, product liability, premise liability, malpractice, and so forth; and it can be extrapolated from (A) and (B) that the fault of two or more intentional actors can be compared in allocating liability between them for payment of a plaintiffs damages. See Landry v. Bellanger, (citation omitted).
Section (C), however, provides a very specific and clear mandate in the case of intentional torts, that the plaintiffs “claim for recovery of damages shall not be reduced,” even if his negligence is part of the cause of his damages. La. Civ.Code art. 2323(C). In other words, the negligence of the plaintiff cannot be used to reduce his recovery if part of his damages are caused by an intentional tortfeasor.
As the Landry court stated,
It is appropriate to consider each party’s respective fault when a matter involves intentional tortfeasors. In prohibiting the reduction of a negligent plaintiffs damages, article 2323(C) reflects a legislative determination that on the continuum of moral culpability, the act of an intentional actor should not benefit from a reduction in the damages inflicted on a less culpable negligent actor.
Landry v. Bellanger, 851 So.2d at 954. Such an application “furthers public policy by preventing an intentional tortfea-sor from using the comparative fault regime to reduce his own obligation to compensate a less culpable victim.” Id.
Le, 72 So.3d at 377-78.
Applying the holdings of the above cited cases, there can be no question that *859 Reece’s physical attack on Wayne was an intentional tort, as this court has previously held. While it may be that Wayne may have engaged in negligent acts, his recovery cannot be reduced. Reece claims, and the majority finds reasonable support for the jury’s finding that, Wayne consented to the battery inflicted upon him and is thus barred from any recovery, but the record does not support that finding.
11fiThe defense of consent in Louisiana operates as a bar to recovery for the intentional infliction of harmful or offensive touchings of the victim. Andrepont v. Naquin, 345 So.2d 1216 (La.App. 1 Cir.1977), 345 So.2d 1216. Consent may be expressed or implied; if implied, it must be determined on the basis of reasonable appearances. Id. at 1219.
Cole v. Department of Public Safety and Corrections, 01-2123, p. 10 (La.9/4/02), 825 So.2d 1134, 1142 (emphasis added).
In Cole, the state supreme court addressed the issue of consent in the context of a work-related injury to a corrections officer. The claimant was injured when he was struck during a training exercise with an unpadded baton. The court found that Cole had not consented to the battery. He had not expressly consented by signing any consent form, and no one “elicited Cole’s consent.” Id. The mere fact that Cole volunteered to participate in the training exercise did not equate to his consenting to a battery on his person of the type and degree inflicted. Under the facts in that case there were no facts which created a “reasonable appearance” that Cole impliedly consented to a battery of his person. Likewise, under the facts as detailed by the majority, nothing creates a “reasonable appearance” that Wayne, who made a hasty retreat to his residence after being accosted on the public roadway by Benjamin, who told his wife to summon the police for help, and who, upon arriving on his own property moved toward Reece (a trespasser), gave express or implied consent to the batteries inflicted on him by Reece and Benjamin.
I further note that La. R.S. 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
h fiWayne was never a legal “aggressor” in this case toward Reece or Benjamin, and evep if his original act of removing the crawfish boat from the partnership property can be said to amount to an act of aggression against Reece, it is clear Wayne retreated from the conflict. I note too, that the ownership of the crawfish boat was still in question at the time Wayne removed the boat from partnership property, a fact acknowledged by the majority. Wayne fled to his home and summoned the police en route in fear of Reece and Benjamin. When Benjamin unlawfully blocked the roadway and caused a collision with Wayne’s vehicle he did not get into an altercation but continued to make his way to the safety of his own home. Reece and Benjamin, however, were clearly aggressors at this stage as evidenced by their actions in pursuing Wayne, blocking the roadway with a vehicle causing a collision, and trespassing upon Wayne’s property.
Additionally, Louisiana Revised Statutes 14:20(C) (emphasis added) provides:
(C) A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this Section, and may stand his or her ground and meet force with force.
*860 (D) No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry.
In a recent Louisiana Supreme Court decision, the court addressed the concept of “retreat” and its interplay with Louisiana’s “stand your ground” law. In State v. Wilkins, 13-2539, p. 1 (La.1/15/14), 131 So.3d 839, 840 (emphasis added) the court found:
117[T]he effect of the 2006 La. Acts 141, amending La.R.S. 14:20 and adding subsections C and D to the statute, was two-fold: a person may choose to defend himself or herself with deadly force under the circumstances defined in R.S. 14:20(A), without considering whether retreat or escape is possible, i.e., a person “may stand his or her ground and meet force with force” (C); and he or she may do so without fear that, if it came to it, a jury may nevertheless second guess the decision not to flee from the encounter in assessing whether the use of deadly force was justified (D).
Thus, under Louisiana’s “stand your ground” law, a person may choose to stand his ground without weighing the possibility of retreating or escaping before responding with deadly force. Fortunately, after being attacked on the public road, pursued to his home, and confronted on his property, Wayne did not resort to deadly force against his own brother. But, Wayne had the legal right to “stand his ground” on his property where he had a legal right to be and was not thereon engaging in unlawful conduct. He did not have to wait for the police, though that might have been a good plan of action, nor was he required to retreat into his house. He had retreated from Reece and Benjamin all the way home to no avail. The law did not require Wayne to retreat farther at that point. He had a right to stand his ground. .It cannot be said under these facts and law that Wayne failed to prove lack of consent to the battery of his person by Reece-on his own property nor can it be said that Reece proved consent as an affirmative defense to his battery. For the reasons stated, I respectfully dissent.